UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
(at Bridgeport)

| | |
|---|---|
| WINTHROP HOUSE ASSOCIATION, INC., ) | Case No.: |
| ) | 3-00-CV-328-AHN |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| BROOKSIDE ELM ASSOCIATES LIMITED PARTNERSHIP, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | May 7, 2004 |

FILED
2004 MAY 10 A 8: 5[?]
U.S. DISTRICT COURT
BRIDGEPORT, CONN

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS LOCAL RULE 72.2(a) OBJECTION**

The plaintiff in the above-entitled Action, **Winthrop House Association, Inc.** (the "Winthrop Association"), hereby files this Memorandum of Law in Support of its Local Rule 72.2(a) Objection with regard to the 12/19/03 Opinion of the *Hon.* Holly B. Fitzsimmons.

A.   **THE WINTHROP ASSOCIATION'S STANDING (Re: the NHW Act)**.

1.   **The 12/19/03 Opinion (pp. 22-27)**. In connection with the Connecticut New Home Warranties Act (the "NHW Act"), C.G.S. §§47-116, *et seq.*, the Court held that the Winthrop Association is not a "purchaser" as defined in §47-116, and thus it has no standing to assert any claims for breach of express warranty ("E/W") or implied warranty ("I/W") under the NHW Act. (As an aid to the Court, the NHW Act and CIOA E/W and I/W sections are appended hereto as Exhibit No. 1.)

2.   **The Subject Law: CIOA's unpredicated Grant of Representative Authority to a Condominium Association**.

(a)   **The Statute**. In the Connecticut Common Interest Ownership Act ("CIOA"), C.G.S. §§47-200, *et seq.*, (all statutory references hereinafter, unless otherwise noted, are to the Connecticut General Statutes), a common interest association, such as the Winthrop

- 1 -

Association, is granted eighteen different "powers" at §47-244(a), including the following relevant power at Subsection (a)(4):

> [To] institute, defend or intervene in litigation or administrative proceedings in its own name on behalf of itself or two or more unit owners on matters affecting the common interest community.

(b) **The relevant CIOA Case Law**. In the seminal decision under §47-244(a)(4), <u>Candlewood Landing Condominium Association, Inc. v. New Milford</u>, 44 Conn. App. 107, 686 A.2d 1007 (1997), the condominium association filed a §12-111 tax appeal (on behalf of its 13 unit owners), to the Town's Board of Tax Review in connection with the municipal tax assessment against the condominium's units and the common elements, pursuant to which the Board then reduced the assessed value of the units but not of the common elements. Said municipal board decision was timely appealed by the association to the Superior Court, in a § 12-117a tax appeal, which dismissed the action for the lack of aggrievement by the association.

In its reversal of the trial court, the Appellate Court first observed that: "§47-244(a)(4) contains *no exceptions* or *limitations* on a condominium association's authority to act on behalf of the unit owners as long as two unit owners agree". 44 Conn. App. at 111, 686 A.2d at 1009. (Emphasis supplied). Thus, the Appellate Court concluded there were no carve–outs from a condominium association's right of representative capacity in litigation, and therefore held that the association was a proper party plaintiff therein in said *non*–CIOA lawsuit:

> If we affirmed the trial court we would be effectively amending §47-244(a)(4) by adding a clause to the effect that, *except for litigation pertaining to tax appeals*, a condominium association may act in litigation and administrative proceedings. We decline to participate in such judicial legislation. (Emphasis in the original). *Ibid.*

Moreover, there was an important practical consideration which was underlying the Appellate Court's holding:

> [W]e cannot ignore the realities of condominium development in this state. Many condominiums consist of hundreds of units. If we construe the tax appeal statute to require that each unit owner bring an individual tax appeal for his fractional ownership of the common elements, we will have burdened the court system and the municipalities with hundreds of cases where a single action by the association could have accomplished the same result more speedily and efficiently. 44 Conn. App. at 111, 686 A.2d at 1010.

This absence of any exceptions to, or limitations upon, the representative right granted in §47-244(a)(4) was subsequently reconfirmed in Caswell Cove Condominium Association, Inc. v. Milford Partners, Inc., 58 Conn. App. 217, 224-25, 753 A.2d 361, 366 (2000), *cert. den.* 254 Conn. 922, 759 A.2d 1023 (2000). Finally, it is noted that under CIOA's predecessor statute, the Condominium Act of 1976, §§ 47-67, *et seq.*, at § 47-80a(5), a condominium association had a similar representative right in litigation, which was (as with § 47-244(b)(4)) without restriction or limitation.

      3.    **The Result Herein**. It is undisputed herein: (i) that neither the 8/25/95 Declaration of Winthrop House Condominium (the "Winthrop Condominium") or the Winthrop Association's By-laws contains any restrictions or limitations on the §47-244(a)(4) representative right in litigation; and (ii) that the breach of E/W and I/W NHW Act claims that are asserted herein are with regard to the common elements (*e.g.*: the exterior brickwork; the roof; the elevator; the Building's central heating system; and so forth) or with regard to problems common to many of the Units. For example, in connection with the NHW Act claims in Count Two of the 2/17/00 Complaint, as amended on 5/19/00 (collectively, the "5/19/00 Complaint"), at Paragraph 19(b), at pp. 84-96, the new HVAC systems (called "PTAC Units") in the Units were negligently installed by the Winthrop Declarant, defendant Brookside Elm Associates Limited Partnership, in violation of the Code, the manufacturer's instructions and also the good workmanship standards. (*See* the Expert Report in Exhibit R, at pp. 4 and 5, to the 5/19/00 Complaint; the Exhibits filed with the 5/19/00 Complaint are, the "5/19/00 Exhibits"; and said Exhibit R is one of the Winthrop Association's six 5/19/00 Expert Witness Reports, the "5/19/00 Six Expert Reports"—Exhibits R, X, Y, Z, AA and UU). As a result

of said negligence, many PTAC Units never worked properly or, even worse, the pipes froze and burst and thereby causing flooding in the (residential) Units and often into the Units on the floors below. (Even the Winthrop Declarant's own agents confirmed in their 1998 reports, 5/19/00 Exhibits S and T, said negligent conduct.)

Obviously, the foregoing PTAC Units problem, which was just one of the many problems that the Winthrop Declarant had introduced into the 1938-constructed Building via its 1994-1999 remediation work, is a §47-244(a)(4) issue "on behalf of ... two or more unit owners on matters affecting the common interest community". With respect to these condominium claims, and, in order to affirm that the Winthrop Association was filing the instant Action in its CIOA statutory representative capacity on behalf of its Unit Owners, the Winthrop Association specifically cited (in Paragraph 1 of each Count of the 5/19/00 Complaint) §47-244(a)(4) and its actual text, and thus confirmed that it was asserting the claims herein on behalf of the Winthrop Condominium's 47 Unit Owners, as follows: (i) for the purchasers of the Units from the Winthrop Declarant; and (ii) for all the other Winthrop Unit Owners, *i.e.*, the subsequent purchasers of the 47 Units (although 25 of the 47 Units are still owned by the original purchasers).

Accordingly, because there is no exception or limitation in CIOA (or in any other statute or in the case law) with regard to a condominium association's §47-244(a)(4) right to sue, thus, the Winthrop Association has the full authority herein to assert the common elements issues and the issues common to many of the Units, which underlie each of the Counts of the 5/19/00 Complaint, including Count Two at p. 107, which specifically asserts such condominium claims under the NHW Act (and also: under the other cited statutes, *e.g.*, CIOA, CUTPA, and so forth; and also under various common law claims). Finally, it is important to note that, consistent with CIOA and with the customary condominium law practice, the Association's By-laws (which were prepared by the Winthrop Declarant), at Section 2.2(e) ("Powers and Duties"), word-for-word formulaically repeat

the statutory text of §47-244(a)(4), in the Winthrop Declarant's affirmation (and thus in its preclusive admission herein) of the propriety of the Winthrop Association's standing in the instant Action to assert the various condominium claims, including the NHW Act claims.

B. **THE VALIDITY OF THE DISCLAIMERS OF THE IMPLIED WARRANTIES.**

1. **The Opinion (p. 52)**. In sum, the Court held that the Winthrop Declarant did validly disclaim the CIOA I/Ws pursuant to §47-276, in three documents, as follows: (i) in its 4/95 Public Offering Statement (the "POS"), at Paragraphs 2(c), 10(1) and 10(2); (ii) in the 10/94 Architect/Engineering Survey by the Winthrop Declarant's Architects, Preiss–Breismeister P.C. ("P/B"), which P/B Survey was POS Exhibit G (and an updated, 11/14/95 version of the P/B Survey was attached to the New York Supplement to the POS–the "P/B Report"—5/19/00 Exhibit E); and (iii) in Paragraphs 12, 24 and 27 of the Winthrop Declarant's standard Purchase Agreement (5/19/00 Exhibit DD). (Each of the foregoing, except for the P/B Report, is cited in full in Paragraph B(3) below.) (In a typographical error in the Opinion, at p. 52, it referred to: (i) POS Paragraphs 10(a) and 10(b), but the correct paragraph numbers are 10(1) and 10(2); and (ii) Paragraph 17 of the Purchase Agreement, but the correct paragraph number is 27.) Although the Court held (Opinion, pp.24-26) that the Association could not bring a claim under the NHW Act, and although the Court therefore did not address the issue of the validity of the I/W disclaimers under the NHW Act, nonetheless, because (as discussed in Section A above) the Association does have standing to file claims under the NHW Act, the Winthrop Association therefore will address herein said NHW Act I/W disclaimer issue.

2. **An Overview: CIOA and the NHW Act are to be liberally construed in favor of the Purchasers**.

(a) **CIOA**. Because CIOA is a consumer protection statute, it is to be "afforded liberal construction in favor of the intended beneficiaries [*e.g.*, the Purchasers] because it

is a remedial statute". Linden Condominium Association v. McKenna, 247 Conn. 575, 592-93, 726 A.2d 502, 511 (1999). In fact, CIOA is one of those rare statutes which states in its explicit text (at §47-212) how it is to be interpreted: "The remedies provided by this chapter [*for example,* a §47-277 action for breach of CIOA warranties] shall be liberally administered to the end that the aggrieved party is put in as good a position as if the other party had fully performed [its CIOA warranties]".

In addition, with regard to CIOA's predecessor statute, *viz.*, the Condominium Act of 1976, C.G.S. §§47-68a, *et seq.*, the Supreme Court has required strict compliance with the technical details of said act. *See, e.g.,* Hall Manor Owners' Assoc. v. West Haven, 212 Conn. 147, 153-54, 561 A.2d 1373, 1377 (1989). Finally, strict scrutiny is a basic principle of statutory construction that is triggered when an act sets forth regulatory requirements to be uniformly applied, and at the same time it provides certain exemptions therefrom, and thus the exemptions must be strictly complied with or otherwise the regulatory scheme could be routinely and easily side-stepped. *See, e.g.,* Hartford Hospital. v. Dept. of Consumer Protection, 243 Conn. 709, 715, 707 A.2d 713, 717 (1998) ("[E]xemptions to statutes are to be strictly construed") (Cit. omitted).

(b) **NHW Act**. Likewise, the NHW Act is a consumer protection statute. *See, e.g.,* Fava v. Arrigoni, 35 Conn. Sup. 177, 179, 402 A.2d 356, 357 (1979). As stated in the context of another consumer protection statute (CUTPA), a consumer protection statute is "remedial in character"; and, accordingly, it "must be liberally interpreted in favor of those whom the legislature intended to benefit". Willow Springs Condominium v. Seventh BRT Dev., 245 Conn. 1, 42, 717 A.2d 77, 99 (1998). (Cits. omitted). Thus, similar to CIOA, the NHW Act is to be liberally construed in favor of the purchasers, and any exemptions from the protection to the purchasers are to be narrowly construed.

3. **The Winthrop Declarant's documents**. Against the foregoing backdrop of the general principles underlying the interpretation and implementation of the two Acts, the Court (as

discussed above) held (Opinion, p. 52) that the Winthrop Declarant did validly set forth (pursuant to §47-276) its disclaimers of the CIOA I/Ws in following sections of the POS and the Winthrop Purchase Agreement, as follows:

(a) **At POS Paragraph 2(c)**:

(c) **Rehabilitation Work**: The buildings are currently being operated as residential apartment buildings. The Declarant will undertake repair and rehabilitation work with respect to all Units except those whose present tenants–in–possession have a statutory right to remain in their Units as tenants and any Unit purchased by a present tenant–in–possession who requests that repair and rehabilitation work not be done in his Unit. Such repair and rehabilitation work may include the renovation of kitchens, the upgrading of electrical systems, the upgrading of some plumbing systems, and the painting of Units. It is also possible that fireplaces will be added to one or more Units. The Declarant has also begun to have repaired and rehabilitated portions of the Common Elements including the painting of hallways, the reconstruction of the front entrance, the repainting and recaulking of windows, and the reconstruction of the building parapet. *All repair and rehabilitation work will be done at the sole discretion of the Declarant. The Declarant makes no representation as to the specific repair and rehabilitation work to be done or as to the date of completion of any such work.* Rehabilitation work on common areas has commenced. Individual Units will be repaired and rehabilitated as they are vacated by current tenants. The Declarant discloses that there is no schedule of such rehabilitation. (Emphasis supplied by the Court).

(b) **At POS Paragraph 10**:

10. **Warranties**. . . .

**LIMITATIONS ON WARRANTIES**: PURSUANT TO SECTIONS 47-276(B) AND 47-118(D) OF THE CONNECTICUT GENERAL STATUTES, THE DECLARANT **WILL INCLUDE IN ITS PURCHASE AGREEMENT** [*WHICH IN FACT IT DID NOT DO*] THE FOLLOWING PARAGRAPHS WHICH PROVIDE THAT CERTAIN OF THE WARRANTIES DESCRIBED ABOVE ARE EXCLUDED:

1. THE IMPLIED WARRANTIES OF SECTIONS 47-275(B) AND 47-118(A) THAT THE IMPROVEMENTS ARE: (1) FREE FROM FAULTY AND/OR DEFECTIVE MATERIALS, (2) CONSTRUED IN ACCORDANCE WITH APPLICABLE LAW AND ACCORDING TO SOUND ENGINEERING AND CONSTRUCTION STANDARDS, (3) CONSTRUCTED IN A WORKMANLIKE MANNER, AND (4) FIT FOR HABITATION ARE EXCLUDED TO THE EXTENT THE IMPROVEMENTS ARE COMPLETED AS OF THE DATE OF THE PURCHASE AGREEMENT. SPECIFICALLY, THE DECLARANT MAKES NO REPRESENTATION OR WARRANTY WHATSOEVER WITH RESPECT TO ANY STRUCTURAL COMPONENT OF THE BUILDING; THE EXTERIOR FACADE OF THE BUILDING; THE ROOF; THE BOILERS OR ANY OTHER

PART OF THE HEATING SYSTEM; THE ELECTRICAL SYSTEM; THE HOT WATER SYSTEM OR THE PLUMBING SYSTEM OR ANY PART OF ANY SUCH SYSTEMS; OR WITH RESPECT TO ANY KITCHEN CABINETS, CARPETING, TILING, WALLPAPER, PAINT OR OTHER SURFACE FINISHINGS OF ANY KIND, WOODWORK, BATHROOM FIXTURES, OR UTILITY FIXTURES OR OUTLETS.

2. THE DECLARANT MAKES NO WARRANTIES AS TO THE CONDITION OF ANY HOT WATER HEATER, AIR CONDITIONER, KITCHEN EQUIPMENT OR APPLIANCES OR OTHER ITEMS CONSIDERED CONSUMER PRODUCTS UNDER THE MAGNUSEN–MOSS FEDERAL TRADE COMMISSION ACT. THE DECLARANT WILL DELIVER TO BUYER ANY MANUFACTURER'S WARRANTIES THAT ARE BOTH APPLICABLE TO SUCH EQUIPMENT OR APPLIANCES AND FOR THE SOLE BENEFIT OF THE CONSUMER PURCHASER. IMPROVEMENTS AND APPLIANCES INSTALLED BY DECLARANT AT A PURCHASER'S REQUEST AND EXPENSE, IF ANY, SHALL BE COVERED BY THE MANUFACTURER'S OR CONTRACTOR'S WARRANTY, IF ANY. (Emphasis supplied; Capitalization in the original).

(c)     **The Winthrop Declarant's Disclaimers in the Purchase Agreement**. In the relevant portions of Paragraphs 12, 24 and 27 of its standard Purchase Agreement (5/19/00 Exhibit DD), the Winthrop Declarant set forth the following:

12. Portions of the Unit, Common Elements and Limited Common Elements have already been completed. Buyer has inspected those portions to the extent desired by Buyer and agrees to accept them, "as is," in their existing condition subject to normal wear and tear between now and the time of Closing.

Seller makes no warranties except those specifically required under Sections 75 through 78 of the Act, Conn. Gen. Stat. Section 47-274 - Section 47-277, if any, as more fully described and limited in the Limited Warranty Administration Program set forth in the Public Offering Statement at Exhibit H. THESE WARRANTIES ARE LIMITED TO THE DURATION SET FORTH IN THE STATUTE. ... All implied warranties are hereby disclaimed and excluded with respect to defects which exceed the specific standards of the Limited Warranty Administration Program, (the "Warranty Standards"), and Buyer consents to the exclusion of implied warranties exceeding said specific standards from whatever source. Buyer agrees that the price paid contemplates this exclusion.

24. Buyer acknowledges that he has read this Agreement and that he understands its terms. Buyer further acknowledges that prior to the date hereof Buyer received a copy of the Public Offering Statement for Winthrop House, including the Declaration and the Bylaws. This Agreement, together with any exhibits attached hereto or to the Public Offering Statement, contains the entire Agreement of the parties and no oral representations or statements, whether by the Broker, its agents or employees, or otherwise, shall be considered binding upon either of the parties. Except as otherwise specifically provided herein, this Agreement shall not be

terminated, modified or waived except by a writing signed by both parties.

**27.** RECEIPT OF A COPY OF THE PUBLIC OFFERING STATEMENT FOR WINTHROP HOUSE NOT LATER THAN THE DATE SET FORTH ABOVE IS HEREBY ACKNOWLEDGED, AND BUYER UNDERSTANDS THAT THE STATEMENT SHOULD BE EXAMINED. (Capitalization in the original; Ellipses supplied by the Court).

  4. **The statutory requirements in the NHW Act for I/W disclaimers; and the Winthrop Declarant's failure to comply with said requirements**.

  (a) **The requirements for NHW Act I/W Disclaimers**. In order to disclaim any I/Ws under the NHW Act, very detailed requirements must be strictly met by a vendor–builder at C.G.S. §47-118(d). More specifically, in order to disclaim any of the NHW I/Ws, each of the following three elements must be set forth in a document that is signed by the purchaser: (i) "*in detail* the warranty to be excluded"; (ii) "the consent of the purchaser to the exclusion"; and (iii) "the terms of the *new* agreement with respect to it". *Ibid.* (Emphasis supplied). More specifically in connection with said new agreement requirement, §47-118(d) does not permit any I/W disclaimers to be included in the contract of sale: "Neither words in the contract of sale, nor the deed, nor merger of the contract of sale into the deed is effective to exclude or modify any implied warranty". *Ibid.* Rather, any such disclaimer must be in a separate and new (*i.e.,* subsequent to the contract of sale) agreement executed by the purchaser. Thus, a valid disclaimer under the NHW Act is critically predicated on a vendor–builder's disclosure of the details of the I/W that is to be excluded, combined with a "new agreement" with new consideration that has been reached between it and the purchaser with regard to the to-be-excluded I/W. Also, it should be noted that (unlike CIOA, at §47-276(b)), the NHW Act has no provision permitting an I/W disclaimer of Code violations, which is very significant herein in view of the numerous Code violations at Winthrop Condominium. (*See* the 5/19/00 Six Expert Reports).

  (b) **The POS's LWA Program, which is referenced in Paragraph 12 of the Winthrop Purchase Agreement, does not constitute a "new agreement" that is required for a valid NHW Act I/W disclaimer; carefully analyzed, the LWA Program's documents are merely the customary interior Punchlists for a Unit**. The only post–contract of sale document

- 9 -

that was executed by the Winthrop Purchasers were one or more documents in connection with the Limited Warranty Administration Program (the "LWA Program"). The reference to the LWA Program documents, which made them operative with respect to the Winthrop Purchasers, was the Winthrop Declarant's statement in Paragraph 12 of its Purchase Agreement, as follows:

> Seller makes no warranties except those specifically required under Sections 75 through 78 of the Act, Conn. Gen. Stat. Section 47-274 - Section 47-277, if any, as more fully described and limited in the Limited Warranty Administration Program set forth in the Public Offering Statement at Exhibit H. [*Said "Program" is not Exhibit "H" in the POS; instead, it is at the end of the POS as Exhibit "L"*].

Simply put, a careful review of the LWA Program documents (the "Punchlists") (copies attached hereto as Exhibit No. 2) reveals that (for the following five reasons) they are merely four standard and sequential punchlists for post-closing "touch–up" work to be done by the Winthrop Declarant with regard to the inside of a Purchaser's Unit (*e.g.*: a wall to be repainted; nicks in the new cabinets to be sanded out and painted; and so forth).

First, the only matters to be addressed in the Punchlists were simply the items to be repaired, and thus the Punchlists constituted the Winthrop Declarant's affirmative commitment to undertake I/W remedial work, which is the opposite of its denial via an I/W disclaimer of any commitment to do such work. Second, it is clear that it was not a NHW Act I/W disclaimer document that must be state in detail the I/W that is to be excluded. Third, as a result of the following explicit terms in each of the Punchlists, these documents obviously relate strictly to items to be repaired in the *interior* of the Units:

> Permission is ( ) is not ( ) given to <u>enter the Unit</u> to perform *the above work* when we are not at home. (Emphasis added).

Critically, instead of its use of the foregoing language that limited the remedial work listed on the Punchlists just to repairs within the interior of the Units, if the Declarant had indeed meant via the Punchlists to also exclude any remedial work with respect to the Common Elements, the Declarant could have said, but it did not say, the following:

- 10 -

> With regard *to that portion of the above work* which relates to the *interior* of our Unit, permission is ( ) is not ( ) given to enter the Unit to perform the specified work when we are not at home. (Emphasis added).

Fourth, there is no description anywhere, including the Punchlists, of what actually constitutes the "specific standards" of the LWA Program, which standards are only tersely referred to in Paragraph 12 of the Purchase Agreement but are never described elsewhere. Instead, the only references to (but not a description of) the LWA Program are the following: (i) the several words in the Purchase Agreement's Paragraph 12 which cite over to the LWA Program; and (ii) the Punchlists, which refer back to "the Warranty Program described in our Purchase Agreement and the Public Offering Statement". In sum, there is no description in the Purchase Agreement, or even in the POS or the Punchlists, of a "Warranty Program".

Fifth, and finally, the Punchlists do not satisfy the Doctrine of Consideration. As required in §47-118(d) for a valid I/W disclaimer, there must be a "new agreement"; and in said context, the Doctrine requires, in connection with any new agreement, that it "must be supported by valuable consideration". Connecticut National Bank v. Voog, 233 Conn. 352, 366, 659 A.2d 172, 179 (1995). Critically, nowhere in the Punchlists is any new consideration given by the Winthrop Declarant to a Purchaser. The Winthrop Declarant's performance of the Punchlist work (*e.g.*, the painting over of nicks in a Unit by the Winthrop Declarant) is not new consideration given by the Winthrop Declarant for a new agreement with a Purchaser. Instead, it is merely past consideration (because a punchlist, per custom, is meant only to fix things inside a Unit that should have been properly completed prior to the closing of title); and therefore the Punchlist work could not constitute consideration that can support a new agreement, *i.e.*, a valid NHW Act I/W disclaimer. *See, e.g.,* Dick v. Dick, 167 Conn. 210, 224, 355 A.2d 110, 117 (1974) ("[P]ast consideration which will not support a [new] promise"). (Cit. and Internal Quotation Marks omitted). In sum, for these five reasons, the Punchlists do not constitute a proper NHW Act I/W disclaimer.

(c)  **Similarly, Paragraphs 24 and 27 of the Winthrop Purchase Agreement do not constitute a proper NHW Act I/W disclaimer.**  The Court cited said Paragraphs 24 and 27, which incorporate the POS into the Winthrop Purchase Agreement, as part of the "detailed disclaimers" of I/Ws. (Opinion, p. 52). However, because (as previously discussed) §47-118(d) ("[n]either words in the contract of sale ... is effective to exclude any [I/W]") requires a "new agreement" subsequent to the contract of sale, and because the 4/95 POS predated not only the Winthrop Purchase Agreements, but it even predated the 8/25/95 Declaration of Condominium, thus the Winthrop Purchase Agreements' incorporation by reference of the POS clearly cannot satisfy the §47-118(d) disclaimer requirement of a "new agreement".

(d)  **The P/B Report does not constitute a proper NHW Act I/W disclaimer document.**  The P/B 10/94 "Architect/Engineering Survey", which was attached as Exhibit G to the POS, was revised on 11/14/95 and included in the New York Supplement only (the "P/B Report"—5/19/00 Exhibit E), with minor modifications that are not relevant herein. A review of the P/B Report indicates that: (i) it addressed 38 various building components but never mentioned any warranties; (ii) it discussed certain defects in connection with many of the building components but never mentioned any warranties; (iii) there was no statement in the P/B Report whether or not any of these defects would or would not be remedied; and (iv) there was not even a reference therein to link the defects discussed in the P/B Report with any of the boilerplate I/W disclaimers that had been made by the Winthrop Declarant in other portions of the POS (_viz._, POS Paragraphs 10(1) and 10(2)) or in Paragraphs 12, 24 or 27 of the Winthrop Purchase Agreement.

Moreover, in none of the other I/W disclaimer clauses on which the Court relied (Opinion, p. 52) is there any reference to the P/B Report as setting forth the defects for which I/Ws were then being disclaimed. For example, in Paragraph 10(1) of the POS, the Winthrop Declarant could have stated, but failed to state:

> "SPECIFICALLY, THE DECLARANT **ADVISES THE PURCHASERS THAT THERE ARE A NUMBER OF DEFECTS IN THE BUILDING WHICH ARE DESCRIBED IN A CERTAIN REPORT WHICH IS EXHIBIT G OF THIS**

PUBLIC OFFERING STATEMENT, AND REGARDING SAID DEFECTS, **THE DECLARANT** MAKES NO REPRESENTATION OR WARRANTY WHATSOEVER WITH RESPECT TO ANY STRUCTURAL COMPONENT OF THE BUILDING ...".

Thus, under the *Hartford Hospital* strict scrutiny standard with respect to exemptions, the P/B Report could not be part of any NHW Act I/W disclaimer because it did not include (in detail or even in general) any reference to I/Ws, nor in the converse was the P/B Report specifically incorporated into any of the Winthrop documents in which an attempt was made to disclaim I/Ws (*i.e.,* in: POS Paragraphs 2(c), 10(1) and (2); and Paragraphs 12, 24 and 27 of the Winthrop Purchase Agreements). Finally, there are two other factors which also render the P/B Report ineffective to constitute or even to support any I/W disclaimer: (i) as a document that was issued less than three months after the 8/25/95 date of the Winthrop Declaration of Condominium, it obviously could not be a part of any post–contract of sale "new agreement" with a Winthrop Purchaser; and (ii) it only addresses historical defects at the Building and does not discuss the many defects (such as the problem–ridden PTAC Units) which the Winthrop Declarant had introduced into the Building during its 1994-1999 rehabilitation of the Building.

(e) **The "Sole Discretion" language in POS Paragraph 2(c) does not constitute a proper NHW Act I/W disclaimer**. In the two sentences in POS Paragraph 2(c) on which the Court focused as constituting one of the "detailed disclaimers" (Opinion, p. 52), the Winthrop Declarant stated: (i) "[a]ll repair and rehabilitation work will be done at the sole discretion of the Declarant"; and (ii) that it "makes no representation as to the specific repair and rehabilitation work to be done or as to the date of completion of any such work". First, there is no aspect of these two sentences that sets "forth in detail the [I/W] to be excluded" or that even refers to the topic of I/Ws. Second, a plain reading of these two sentences clearly shows that the sentences in fact discuss matters which are the opposite of a vendor–builder's denial via an I/W disclaimer of any commitment to do remedial work. More specifically, the two sentences discuss the twice–repeated promise that there *will* be repair and remediation work undertaken by the Winthrop Declarant. Thus, the two

sentences could not be read as constituting a disclaimer of any I/Ws. However, when measured against the §47-118(d) stringent requirements that there must be a "new agreement" (which, the Winthrop contract of sale's incorporation of POS Paragraph 2(c), obviously is not) that sets forth "in detail the [implied] warranty to be ... modified", thus, the "sole discretion" language in POS Paragraph 2(c) simply cannot constitute any aspect of a valid NHW Act I/W disclaimer.

     5. **The statutory requirements in CIOA for a valid I/W disclaimer; and the Winthrop Declarant's failure to comply therewith**.

     (a) **The CIOA requirements for a valid I/W disclaimer**. Under CIOA, the same four I/Ws that are set forth in the NHW Act (at §§47-118(a)(1)-(4)) are also set forth in §§47-275(b)(1) and (2). However, there are two additional I/Ws in CIOA, *viz*.: (i) that the unit and common elements are "constructed in accordance with applicable law", §47-275(b)(2), *i.e.*, the applicable state building and fire codes (the "Codes"); and (ii) that, as applicable herein to a unit (and its related components) in a conversion condominium because there is to be a continuation of an "existing use", the Codes have additionally been met as of the "earlier of the time of conveyance [to the purchaser] or delivery of possession", §47-275(c). Then, in the event that a Declarant desires to disclaim any of the six CIOA I/Ws pursuant to §47-275(d), the Declarant must comply with the provisions of §47-276(b). More particularly, §47-276(b) requires: (i) that the *defect* or class of defects that is to be excluded must be "specified" (in sharp contrast to setting forth in detail, pursuant to the NHW Act at §47-118(d), the implied warranty that is to be excluded); and (ii) that, in exchange for the exclusion of the specified defect, there needs to be an "instrument", *viz*., a new agreement entered into by the parties with respect to a I/W disclaimer of the defect in exchange for new consideration given to the purchaser, which instrument would then in turn "became a part of the basis of the bargain" between the parties, *Ibid*.

     (b) **None of the Winthrop Declarant's documents that were relied upon by the Court constitute, individually or cumulatively, a valid CIOA I/W disclaimer**. First, in POS Paragraph 2(a) (Re: the "sole discretion") and Paragraphs 10(1) and (2) (Re: no representation

- 14 -

or warranty regarding structural components, *et al.*), it is undisputable not only that is there no reference at all to any specified defect or specified class of defects, there is not even a general reference to any defects.

Second, in the P/B Report, while there are references to some specified defects and specified classes of defects as they existed in 1995 (but no discussion is made with regard to the defects Winthrop Declarant introduced during its 1994-1999 rehabilitation), however, with regard to the other CIOA I/W disclaimer requirement of identifying any "specified failure to comply with [the Code]", the P/B Report: (i) makes an unsupported and therefore ineffective representation (at p. 11) about Code compliance at the time of construction of the 1938 Building ("Unless otherwise noted [which was not done], all building components are *assumed* to meet the building code requirements in force at the time of construction") (Emphasis supplied); (ii) with regard to any required Code upgrades to the 1938 construction, the P/B Report only has three vague references thereto in the "Notes" section, at Paragraphs 8 and 12 and in the Summary, and it has a catchall statement at p. 11 that "[current] regulations, codes and/or laws may require some aspect to be upgraded to meet current standards", which are insufficient details to constitute part of a CIOA I/W disclaimer regarding the §47-275(c) current Code compliance; and (iii) has no discussion with regard to the Code violations that the Winthrop Declarant had introduced into the Building (for example: the doors installed by the Winthrop Declarant in the basement that were in violation of Connecticut Building Code §§302.1.1.1 and 717.0 — *See* 5/19/00 Exhibit X, at p.4).[1] Finally, as discussed above in Paragraph B(4)(d), there

---

[1] Although the Court acknowledged (Opinion, p. 4 n. 3) that it had not considered the 5/19/00 Six Expert Reports, nevertheless, it did rely on various statements made by the Winthrop Declarant in its two 2001 Briefs about the condition of the Building, for example, that there had been no citations by Town officials of any unremediated code violations. (Opinion, p.5). However: (i) the absence of any citations for violations, of course, would not be proof of whether or not there were in fact any violations; and (ii) importantly herein, the Winthrop Association's experts, who are three professional engineers and one A.I.A. architect, have opined in detail (with specific Code citations) in the many pages of their 5/19/00 Six Expert Reports that there are numerous Building and Fire Code violations which were either pre-existing at the Building or which the Winthrop Declarant by its own conduct had introduced into the common elements or to the Units.

- 15 -

was no reference in the P/B Report itself, or in the POS and the Winthrop Purchase Agreements, that the Winthrop Declarant intended to disclaim any I/Ws with respect to the *defects* discussed in the P/B Report. Thus, the P/B Report did not constitute a valid CIOA I/W disclaimer document.

Third, in none of Paragraphs 12, 24 and 27 (or in any other Paragraphs) in the Winthrop Purchase Agreement is there any statement that the Winthrop Declarant was disclaiming any "specified defect or class of defects or specified failure to comply with [the Code]", §47-276(b). In addition, the only document which was signed by Winthrop Purchasers and which did relate to specified defects in connection with Winthrop Condominium was the set of Punchlists. However: (i) as discussed above in Paragraph B(4)(b), the Punchlists only related to items in the interior of the Units; (ii) the enumeration of defects on the Punchlists was not made in order to disclaim the Winthrop Declarant's I/W responsibility therefor, but instead it was the polar opposite, viz., the defects were specified in the Punchlists solely in order for the Winthrop Declarant to accept the responsibility therefor and to then to have them remediated; and (iii) accordingly, the Punchlists did not constitute CIOA I/W disclaimers. In sum, the documents relied on by the Court (Opinion, p. 52), either individually or cumulatively, did not constitute a valid CIOA I/W disclaimer.

6. **The analysis regarding the ineffectiveness of the Winthrop Declarant's I/W disclaimers is supported by the NHW Act decision in *Cafro* (2001).** The only appellate level decision in Connecticut with regard to the validity a vendor–builder's disclaimer of I/Ws is the NHW Act decision in Cafro v. Brophy, 62 Conn. App. 113, 774 A.2d 206, *cert. den.* 256 Conn. 932, 776 A.2d 1149 (2001). Therein, the Appellate Court required strict compliance with the specific requirement of "Section 47-118(d) [which] expressly provides that an effective disclaimer must set 'forth in detail the warranty to be excluded or modified ...'". *Id.*, 62 Conn. App. at 123, 774 A.2d at 212. In this context, when measured against this strict Cafro reading of §47-118(d), the disclaimers by the Winthrop Declarant failed to provide the required NHW Act details of the