warranties to be excluded. This strict compliance required by <u>Cafro</u> with regard to NHW Act I/W

disclaimers would be also applicable to the related Act, CIOA, thus confirming that a declarant which

seeks to disclaim the six CIOA I/Ws must with clarity specify each defect and also each non–Code

compliant item which it seeks to disclaim, which the Winthrop Declarant did not do.

In its Opinion, although the Court only briefly discussed <u>Cafro</u> (Opinion, pp. 52-53), it then

discussed at length (Opinion, pp. 53-61) various non–Connecticut I/W disclaimer decisions, which

would not be applicable herein because these decisions conclusively show that the rigorous I/W

disclaimer provisions in the NHW Act and CIOA are not found in the statutes or case law of the sister

states. For example, the Court discussed <u>Alexander v. Henderson Condo. Assoc., Inc.</u>, 778 So. 2d

627, 629 (La. Ct. App. 2002), in which the Louisiana Court held that the I/W disclaimer was valid

because the declarant had used in its contract of sale: (i) the formulaic words, "as is"; and (ii) a

blanket waiver ("without any warranty whatsoever, either express or implied, ...). 778 So. 2d at 628.

However, said decision would not be applicable in Connecticut because the stringent requirements

in each of the two Acts would invalidate the <u>Alexander</u> I/W disclaimers, as follows: (i) under the

NHW Act, an I/W disclaimer must be set forth in a post–contract of sale agreement with new

consideration, and separately, the details of the I/W to be disclaimed must be set forth; and (ii) under

CIOA, the use of general disclaimers ("as is", or "with all faults") can be valid under §47-276(a) but

in contrast (and as is applicable herein) is not valid under §47-276(b), and separately, the defects and

Code violations to be excluded (not the I/Ws to be excluded) must be specified. In sum, the

non–Connecticut decisions cited by the Court re-confirm that there are stringent statutory

requirements in Connecticut for I/W disclaimers which not only are unique to our state but which have

not been complied with by the Winthrop Declarant.

7.    **The guidance provided by the *Emlee Equipment v. Waterbury Transmission*
decision, in an analogous context, regarding the consideration that is required for warranty
<u>disclaimers</u>**.    In its Decision, at p. 64 n.25, the Court found that <u>Emlee Equipment Leasing v.</u>

<u>Waterbury Transmission, Inc.</u>, 31 Conn. App. 455, 626 A.2d 307 (1993), was not relevant to this

- 17 -

NHW Act and CIOA case. However, other than Cafro, *supra,* Emlee Leasing is the only Connecticut appellate level decision addressing (in any context) the validity of warranty disclaimers. Therein, the Appellate Court addressed at length the issue of whether or not a global disclaimer made by an equipment lessor with regard to all warranties, express and implied, was effective against the equipment lessee. In response to the lessee's argument that the lease was breached because of defective equipment, the factor upon which the Appellate Court relied in its determination that the complete disclaimer was not unconscionable and therefore was enforceable, 31 Conn. App. at 471-72, 626 A.2d at 316, was that the lessee, notwithstanding the lessor's contractual exculpation of any warranty liability, nevertheless still had (via the lessor's specific assignment) a viable warranty recourse against the manufacturer of the equipment if the leased equipment failed to perform as expected. In its decision, the Appellate Court cited with approval, 31 Conn. App. at 472, 626 A.2d at 316, the decision in Irving Lease Corp. v. M&H Tire Co., 16 Ohio App. 3d 191, 475 N.E. 2d 127, 131 (1984), in which the Ohio Court held that an equipment lease which included a disclaimer of all warranties and importantly which had failed to give the lessee any recourse against the manufacturer for warranty claims was unconscionable and therefore unenforceable.

In sum, the common law doctrine applicable herein from Emlee Leasing is that disclaimers of warranties will be enforced only if the disclaiming party (a seller or lessor) does give adequate consideration to the purchaser or lessee in exchange for the disclaimer (in Emlee Leasing, the valid consideration was that the lessor had assigned to the lessee the lessor's warranty rights). This requirement of consideration is the same requirement in the NHW Act and CIOA for I/W disclaimers to be valid. More specifically, each of the Acts requires that a *post*–contract of sale document must be executed: (i) for a disclaimer of NHW Act I/Ws, §47-118(d), there must be a "new agreement" entered into after the execution of the contract of sale; and (ii) for a disclaimer of CIOA I/Ws, §47-276(b), it must be in an "instrument" that is separate from the contract of sale, and the declarant's consideration that is then given for the disclaimer in said document becomes "part of the basis of the

bargain". In other words, in either document, there must be consideration given to the purchaser in exchange for the disclaimer. This result is in accord with the seminal requirement for all agreements that "[t]o be enforceable, a contract must be supported by valuable consideration", <u>Connecticut National Bank v. Voog</u>, 233 Conn. 352, 366, 659 A.2d 172, 179 (1995) (Cit. omitted), and thus, the new document must be supported by adequate consideration to the purchaser. In conclusion, <u>Emlee Leasing</u>, *supra,* confirms that consideration to the purchaser is necessary in exchange for a warranty disclaimer. However, there is no claim that, after the Winthrop Purchase Agreements were executed with each purchaser, there were any negotiations or documents between the Winthrop Declarant and the purchasers which gave the purchasers new consideration (*for example*, a price reduction of 10%) in exchange for the purchasers' agreement to an exclusion of I/Ws.

C.     **THE WINTHROP DECLARANT'S E/WS IN RIDER II TO THE SORROW PURCHASE AGREEMENT**.

1.     **An Overview**. The Court held that there were two sets of CIOA E/Ws, at §47-274(a), made by the Winthrop Declarant: (i) the Building Plans (Opinion, pp. 45-46); and (ii) in the P/B 11/14/95 Letter (the "P/B Letter") (5/19/00 Exhibit F), although the Court held that the E/Ws in the P/B Letter (the "P/B Letter E/Ws") are to be apportioned to only some of the Winthrop Unit Owners (Opinion, pp. 42-44). However, there was a third set of E/Ws by the Winthrop Declarant, which is the subject of this Section C of the Brief.

2.     **The Opinion (pp. 46-49)**. In connection with the 4/23/96 Purchase Agreement (the "Sorrow Agreement") (5/19/00 Exhibit QQ) between the Winthrop Declarant and Jerry W. and Pamela B. Sorrow for the purchase of Winthrop Unit No. 55, the Sorrows attached a 9–Paragraph Rider II (the "Sorrow Rider II"), in which three of the Winthrop Declarant's E/Ws (at Paragraphs 7(a), (b) and (e) thereof) were specifically stated to "run to the Association". However, the Court held that "the terms of the [Sorrow] Agreement apply [only] to the parties to that Agreement, namely Brookside Elm and the Sorrows". (Opinion, pp. 47-48). In addition, the Court held because

Paragraphs 7(b) and (e) refer to the POS, and because "the terms of the POS dictated the scope of work to be done", therefore, the Winthrop Declarant had "the sole discretion with respect to what repairs, if any, would be done". *Id.,* at p. 48 (Cit. and Internal Quotation Marks omitted). The Court also held that the E/Ws in Paragraphs 7(a), (b) and (e) "relate only to any labor or material warranties provided by [the Winthrop Declarant's] Contractors and did not confer on the Association a right of action as a third party beneficiary against Brookside Elm". *Id.,* at p. 49. Finally, the Court held that although the Sorrows owned their Unit as of the time of the 5/19/00 Complaint, but because they now are no longer Winthrop Unit Owners, thus, the Winthrop Association "may not enforce the other terms of the Sorrow Rider II". *Ibid.*

      3.    **The requirements of the Connecticut common law doctrine regarding third party beneficiaries**.    The Supreme Court reaffirmed the absence of any requirement of privity, and also the other elements of, said doctrine in <u>Gateway Company v. DiNoia</u>, 232 Conn. 223, 230-31, 654 A.2d 342, 346 (1995), as follows:

> A third party beneficiary may enforce a contractual obligation without being in privity with the actual parties to the contract. Therefore, a third party beneficiary who is not a named obligee in a given contract may [nonetheless] sue the obligor for breach. ... The proper test to determine whether a lease creates a third party beneficiary relationship is whether the parties to the lease intended to create a *direct obligation* from one party to the lease to the third party. (Cits. and Footnote omitted; Ellipses added; and Italics in the original).

*Accord:* <u>Delacroix v. Lublin Graphics, Inc.</u>, 993 F. Supp. 74, 83 (D. Conn. 1997) (WWE). Therefore, the third party beneficiary is "entitled to enforce contractual obligations without being a party to the contract and thus may sue the obligor for breach". <u>Detroit Institute of Arts Founders Society v. Rose</u>, 127 F. Supp. 2d 117, 129 (D. Conn. 2001) (CFD) (*citing* <u>Delacroix</u>, *supra*). Moreover, "[t]o be valid, there need *not* be express language in the contract creating a direct obligation to the third party beneficiary". *Ibid.* (Cit. omitted; Emphasis supplied).

      4.    <u>**Application of the Third Party Beneficiary Doctrine to Sorrow Rider II**</u>. The specific text of Paragraphs 7(a), (b) and (e) of Sorrow Rider II are, as follows:

7. The Seller hereby represents, warrants and guaranties, which representations, warranties and guaranties shall survive the Closing, as follows:

(a) the roof of the building shall be replaced by a reputable professional roofing company, which company shall (i) use top quality materials, (ii) complete such repair and replacement in a good and workmanlike manner and (iii) provide a warranty for a term of not less than 10 years, which warranty shall be for labor and materials, and *shall run to the Association*.

(b) the exterior of the building has been repointed and repaired where needed in a good and workmanlike manner so as to prohibit seepage into the building as described in the Public Offering Statement; any warranty for such repointing and repair *shall run to the Association*.

(e) all repairs recommended in the Public Offering Statement relating to the central boiler and heating system have been completed and any and all warranties *will run to the Association*. (Emphasis supplied).

In connection with said Three Subparagraphs: (i) the Winthrop Association is undeniably an explicitly agreed–upon and specifically identified third party beneficiary; and (ii) as such, the Winthrop Association does have the unpredicated right to directly sue the Winthrop Declarant (regardless of any termination of the Sorrows' status as Winthrop Unit Owners) for a breach of the Three Subparagraphs, *See, e.g.,* Denoia, 232 Conn. at 230-31, 654 A. 2d at 342; and Delacroix, 993 F. Supp. at 83.

In addition, in contrast to the Court's characterization of the promises in the Three Subparagraphs as relating "only to any labor or materials provided by the Contractors" (Opinion, p. 49), a careful reading of the Three Subparagraphs shows that the Winthrop Declarant had warranted three interrelated matters to the Winthrop Association: (i) that certain remedial work was already done (Paragraphs 7(b) and (e)) or would be done (Paragraph 7(a)); (ii) that the subject items of remedial work had accomplished their specific purposes (Paragraph 7(b)—"so as to prohibit seepage into the building"; and Paragraph 7(e)—to undertake the repairs to the central boiler and heating system that had been recommended in the POS); and (iii) finally, that the subject remedial work was warranted to the Winthrop Association. For example, in Paragraph 7(a), the Winthrop Declarant stated that it "represents, warrants and guaranties" that: (i) the roofing contractor would replace the roof; (ii) that

the labor and materials would be of "top quality"; and (iii) separate from the Winthrop Declarant's foregoing warranty about the work, that the roofing contractor *also* would give a warranty (which was in fact given, but only for its materials and not for its defective labor that was described in detail in Exhibit Y, at pages 3-6). In sum, it was the quality and also the scope of the remedial work that was warranted in these E/Ws by the Winthrop Declarant to the Winthrop Association (in addition to any E/Ws to be given from the Contractors).

Moreover, as discussed in Paragraph D(7)(b) below, it is the condominium association (and not the unit owners) that has the CIOA duty to repair the common elements pursuant to §47-244(a)(6). Thus, if there were a breach of any of a declarant's common elements promises, it is unquestioned that it is the association that must repair the problems in contrast to the obligation of any individual unit owner. Therefore, because "[i]t is not necessary that express language in the contract create the [third party beneficiary] obligation", Delacroix, 993 F. Supp. at 83 (Cit. omitted), it is the condominium association which is the obvious third party beneficiary of a declarant's E/Ws concerning the common elements. Confirmation of said E/Ws conclusion is given in the related context of the statutory doctrine regarding I/Ws in CIOA, at §47-275(g), *viz.*, that the CIOA I/Ws "with respect to common elements shall also extend to the Association". Accordingly, with respect to the numerous E/Ws throughout the Sorrow Rider II concerning common elements items (for example, the common elements E/W in Paragraph 7(d) that "the elevator will be repaired to insure accurate leveling at each floor and smooth ride"), it is the Winthrop Association which is the third party beneficiary (even though it is specifically named in only Paragraphs 7(a), (b) and (e)).

D.    **THE FIRST APPORTIONMENT ISSUE (Re: the Subsequent Unit Owners and their right to recover under the NHW Act).**

1.    **The 12/19/03 Opinion (pp. 25-27).** The Court held that the subsequent unit owners at the Winthrop Condominium, *i.e.,* subsequent in time to the original purchasers from the Winthrop Declarant, could not recover under the NHW Act because: (i) under §47-119, the NHW

Act's warranties are not transferred to subsequent purchasers; and (ii) under §47-116, a "purchaser" is defined only to be the "original buyer, his heirs or designated representatives".

        2.     **§47-119 only addresses a vendor's successor**. In its title and in its text, §47-119 solely addresses a vendor's attempt to evade the NHW Act via the vendor's transfer to an intermediary, or "straw man":

> **§47-119. Vendor not to evade by intermediate transfer.** Any vendor who conveys an improvement to an intermediate purchaser to evade the provisions of this chapter shall be liable to the subsequent purchaser as if the subsequent conveyance had been effectuated by the vendor to the subsequent purchaser.

Because said statutory provision makes no reference to the original purchasers who are unrelated to the vendor, and because it only relates to misconduct by a vendor and not to any aspect of the post–purchase transfer by the first substantive (*i.e.,* original) unit owner, the Court was not correct in its holding (at p. 25) that "[u]nder §47-119 of Chapter 827, warranties are not transferred to subsequent purchasers".

        3.     **The guidance provided by the NHW Act decision of *Cashman v. Calvo* Re: when a claim for a breach of a NHW Act warranty "accrues"**.     In Cashman v. Calvo, 196 Conn. 509, 493 A.2d 891 (1985), at issue was the statutory one–year warranty period in §47-118(e), which provides that the NHW Act's I/Ws terminate one year (the "First Year") after the vendor–builder's delivery of the deed. The vendor–builder therein had argued that not only must the I/W breach arise in the First Year, but also that the action for breach of I/W must be filed in the First Year. In response, the Supreme Court held, 196 Conn. at 511, 493 A.2d at 892:

> The one–year period from the delivery of the deed or the taking of possession is a limitation upon the period in which an action for breach of warranty may arise, not within which it must be commenced.

The guidance provided herein by Cashman is that the First Year warranty periods in §47-118(e) (Re: I/Ws) and §47-117(d) (Re: E/Ws) only relate to a determination of when an action for breach of a NHW Act warranty accrues/arises, *viz*., that the breach of a NHW Act warranty must occur during the First Year, and of course during the original purchaser's ownership. Stated another way, the

"original purchaser" limitation in the NHW Act only relates to the fact that the breach of an I/W or E/W must occur during the original owner's ownership in the First Year, in contrast to setting forth a limitation with respect to when or with respect to who can sue for such a breach.

Therefore, under <u>Cashman</u>, in an action for a breach of a NHW Act warranty that has arisen in the First Year and during the original owner's ownership, the only limitation is that the lawsuit must thereafter be filed within the applicable statute of limitations. 196 Conn. at 511 n.1, 493 A.2d at 892 n.1. Thus, the narrow inquiry is whether or not the Winthrop Declarant's breaches of the NHW Act I/Ws and E/Ws arose in the First Year. First, in this context of whether such breaches occurred during the First Year, it has not been disputed in the instant Action (*i.e.*, the Winthrop defendants have not filed any expert reports at any time, including during the four–year period since the filing of this Action) that, as confirmed in the 5/19/00 Six Expert Reports, there were many construction defects that either existed as of the time of the 8/25/95 Declaration of Condominium or that were introduced into the Building (including into the Units) by the Winthrop Declarant's own work during its 1994-1999 rehabilitation of the condominium building. Second, it is also undisputed that these two sets of defects, *i.e.,* pre– and post– the 8/25/95 Winthrop Declaration, were *ab initio*: (i) in violation of the applicable Codes (building or fire) (*for example*: when the Declarant installed the sprinkler system in the basement, it removed and then failed to replace a considerable portion of the fireproofing in violation of the Fire Code—*See* 5/19/00 Exhibit X, at p.4); (ii) in violation of the "degree of care [of] a skilled builder of ordinary prudence", *See, e.g.,* <u>Coburn v. Lenox Homes, Inc.,</u> 173 Conn. 567, 574, 378 A.2d 599, 602 (1977) (Cit. omitted), (*See* the 5/19/00 Six Expert Reports—*for example*, 5/19/00 Exhibit Y, at pp. 3-4, Re: the defective roof installation by the Winthrop Declarant); and/or (iii) in violation of the requirement of "construct[ion] in a workmanlike manner" (NHW Act I/W, §47-118(c)(3)) (*See* the 5/19/00 Six Expert Reports).

Thus, the Winthrop Association has satisfied the NHW Act's requirement with respect to the First Year because the breach of the NHW Act's I/Ws and E/Ws existed at Winthrop Condominium

as of the first day of each original Winthrop Unit Owner's title ownership (or, on the first day that the

defective improvement was completed after an original unit owner took title), which was well within

the §§47-117(d) and 118(e) one-year warranty periods.  In sum, the significance of the statutory term

"purchaser" in §47-116 is that it determines what constitutes  the First Year, not who can recover for

a NHW Act breach.  Therefore, the next issues are: who is a proper party who can recover on a breach

of I/W claim under the NHW Act, which is addressed below in Paragraphs D(4)–(7); and, separately,

who can recover for a breach of E/W claim under the NHW Act, which is addressed below in

Paragraph D(7).

      4.    **The Connecticut common law Re: the absence of a privity requirement for a
negligent construction claim regarding a defectively constructed dwelling**.    In <u>Coburn</u>, 173

Conn. at 574, 378 A.2d at 602, the Supreme Court held that a claim for negligent home construction

is based on a breach of the "duty to exercise that degree of care which a skilled builder of ordinary

prudence would have exercised under the same or similar conditions" (Cit. omitted), which in turn

creates a "defectively constructed house" (said breach of duty is a  "Defective Construction Claim").

*Id.,* 173 Conn. at 575, 378 A.2d at 603.  Because a claim for negligent construction, or a Defective

Construction Claim,  is a tort claim and not a contract claim, *Ibid.,* there is no requirement of privity

between the vendor–builder, and thus a subsequent homeowner can properly be the plaintiff seeking

damages. *Ibid.*

      This absence in tort law of a privity requirement has been repeatedly reaffirmed post–<u>Coburn</u>

by the Supreme Court.  More particularly, in <u>Gazo v. City of Stamford</u>, 255 Conn. 245, 253-54, 765

A.2d 505, 510 (2001), the Supreme Court reaffirmed this non–privity doctrine of tort liability (citing

<u>Coburn</u>, *supra,* and <u>Zapata v. Burns</u>, 207 Conn. 496, 542 A.2d 700 (1988)), even though the

negligence had occurred in the context of a contractual relationship.  As summarized in <u>Gazo</u>, 255

Conn. at 253, 765 A.2d at 510:

      In *Coburn*, a contractor was held liable to a subsequent purchaser of a house in which the
      contractor had installed  a faulty septic system.  We determined  that privity  was not a

requirement to sustain the plaintiff's tort action.  Moreover, we stated that "[i]t is clear that a defectively constructed house is likely to result in damage to the owner and there is no reason why the [contractor] should not be liable for the effects of his negligence if they were foreseeable." (Cit. omitted; Brackets in the original).

The second decision cited in Gazo, *i.e.,* Zapata, applied the non–privity negligence doctrine to the other half of a home construction team, that is, the architects even though the plaintiff was not a party to the contract between the architect and home builder. *Id.,* 207 Conn. at 516-17, 542 A. 2d at 710-11. In sum, the only requirements for such non–privity tort liability are that the losses have been suffered by a third party as a result of the defendant's negligence and that the losses were reasonably foreseeable.  Importantly herein, as reconfirmed in Gazo, 255 Conn. at 253, 765 A.2d at 510, the losses suffered by a subsequent homeowner as a result of negligent construction are foreseeable and thus are actionable by the subsequent purchaser against the vendor–builder.

     5.     **The text of the NHW Act's I/Ws confirms that the I/Ws are based on tort law standards**.     In the introductory language of §47-118(a), which sets forth the I/Ws, the I/Ws are not based on any requirements arising out of a vendor–builder's contract of sale (*i.e.,* the statutory text does not state: "In the contract of sale between a vendor and the purchaser, warranties are implied that ..."). Instead, the text reads: "In every sale of an improvement by a vendor to a purchaser, ... warranties are implied that the improvement is ...". *Ibid.* Moreover, the text of the §47-118(a) I/Ws standards (*e.g.,* that the dwelling is to be "constructed according to sound engineering standards", §47-118(a)(2)) uses the negligence standards of a Defective Construction Claim in tort, which is in contrast with the NHW Act E/W duty in §47-117(a) to comply with the written promises that are explicitly stated in the contract of sale (or in the contract's related documents, such as plans).  The issue then arises is whether the non–privity doctrine of tort liability is to be applicable to claims for a breach of the NHW Act I/Ws, and is addressed in Paragraph D(6) next below.

     6.     **The Presumption against statutory abrogation of existing common law rights**. It is clear that the Connecticut common law at the time of the 1975 enactment of the NHW Act, P.A. 75-637, was that there was no privity required for a negligence claim.  More specifically, in the 1977

decision in Coburn, 173 Conn. at 575-76, 378 A.2d at 603, the Supreme Court cited numerous

pre–1975 Connecticut decisions as precedents for its holding that there is no requirement of privity

for a negligence claim.

Against this backdrop of the 1975 existing state of the common law of negligence, which did

not require privity (and still does not require privity, *See, e.g.*, Gazo, 255 Conn. at 253-54, 765 A.2d

at 510-11 (2001)), the first applicable rule of statutory construction is that there is a "presumption

against statutory abrogation of common–law rights". Rumbin v. Utica Mutual Ins. Co., 254 Conn.

259, 267 n. 8, 757 A.2d 526, 530 n.8 (2000). More particularly:

> In the absence of such explicit language [of the legislature's desire to alter the common
> law of negligence], we adhere to our long–standing rule that [n]o statute is to be
> construed as altering the common law, farther than its words import [and a statute] is
> not to be construed as making any innovation upon the common law which it does not
> fairly express. *Id.*, 254 Conn. at 266, 757 A.2d at 530 (Internal Quotation Marks
> omitted; First Brackets added).

In this context, a review of the text of the NHW Act does not indicate that the General Assembly had

intended to change to any extent the common law of negligence in any of the sections of the NHW

Act. Therefore, a second rule of statutory construction becomes applicable: "It is assumed that all

legislation is interpreted in light of the common law at the time of its enactment". Maxwell v.

Freedom of Information Commission, 260 Conn. 143, 151, 794 A.2d 535, 540 (2002) (Cits. and

Internal Quotation Marks omitted). As a result, the common law of negligence as of 1975, which did

not require privity, and still does not require privity, thus means that a subsequent purchaser of a

dwelling (including a conversion condominium unit) has a viable Defective Construction Claim under

the I/W section of the NHW Act against the vendor–builder.

7. **Likewise, but for different reasons, a subsequent unit owner can sue for a
breach of a NHW Act E/W.** The primary claim for a breach of E/W under the NHW Act is based

on the vendor–builder's contract of sale (including any plans and specifications included in, or

referred to, in the contract of sale). §§ 47-117(a)(1) and (2). Thus, the issue concerning a breach of

NHW Act E/W is not whether the dwelling was defectively constructed, but instead it is whether the

vendor–builder failed to construct what he had expressly promised. Such an E/W claim under §47-117(a) clearly would be a breach of contract claim, which would ordinarily require direct privity between the vendor–builder and the plaintiff homeowner. *See, e.g.,* Coburn, 173 Conn. at 574, 378 A.2d at 602. However, because of the special nature of a condominium, and the respective CIOA rights and duties that uniquely apply to a condominium association and its unit owners, in sum, a subsequent unit owner is entitled to be a plaintiff for a breach of a NHW Act E/W, as follows:

> (a) **It is irrelevant to a Condominium Association's duty to repair condominium items, and the unit owners' correlative duty to pay for the same, that the damage was incurred during the ownership of an original unit owner or a subsequent unit owner; and the non–differentiated and automatic continuity of interests (*i.e.,* rights and duties) between the original and subsequent unit owners.** It is the *raison d' être* of a condominium, as managed

by its association, that the association (without any dividing line in CIOA, or the case law, between the rights and duties of the original and subsequent unit owners) shall "[r]egulate the use, maintenance, repair, replacement and modification of the common elements", and that it shall "receive [from the unit owners] any payments, fees or charges for the ... operation of the common elements". CIOA, at §§ 47-244(a)(6) and (10) (Ellipses added). *Accord*: 15A Am. Jur. 2d, Condominiums and Cooperative Apartments, §§ 25 and 33, at pp. 795 and 801 (2000). (Similarly without any distinction or other differentiation between the original and subsequent unit owners, the Winthrop Association's Declaration and Bylaws also set forth the foregoing respective blanket duties upon the Winthrop Association and the Unit Owners.) As confirmed even by the name of the governing statute, the *Common* Interest Ownership Act, it is the core concept that a condominium is a community for which all the successive owners of the units (original and otherwise) have continuing, non–divisible interests in common (*i.e.,* interests that are not divisible between original and subsequent unit owners) with respect to: (i) ensuring, via their condominium association, that their complex is properly maintained and repaired at all times; and (ii) ensuring that there is an adequate and ongoing cash flow from them into the association via common charges in order to pay for the maintenance and also for repairs regardless of when the problem that is to be fixed first arose.

An illustration of this necessary condominium practice would be defective vacuum–sealed, double–pane windows installed by the declarant at a condominium. Although the declarant typically sets forth a standard one–year warranty for materials in its contracts of sale, which would be a NHW Act and CIOA E/W under §47-117(a)(1) and §47-274(a)(1), and although the defective window seal that eventually causes the vacuum to be lost and a "mist" to then form in the window interspace did exist on the first day of the warranty period, an association typically will wait until half a dozen or more window seals have popped before undertaking, under economies of scale best management practice, the replacement of such windows. Even though the defect existed during the subject original unit owners' ownership, and even though one or more of said original owners may no longer be unit owners at the time of repair, nonetheless, and as would be anticipated, the unit owners at the time of the repair would expect to have to pay for the window replacements via their common charges, and importantly herein, they would further expect that the association would then seek reimbursement at such time from the declarant for the repairs.

In sum, the successive unit owners at a condominium is a collective and undifferentiated group which necessarily constitutes a seamless continuum of successive financial and other legal interests, as follows: (i) they are automatic successors–in–interest to the rights, duties and obligations of their respective predecessors–in–title with respect to the condominium; (ii) as such, they must (per CIOA and the Winthrop Bylaws) jointly and severally (acting through their association) maintain and repair the common elements and other condominium–wide problems regardless of when the problems first arose; and (iii) if such maintenance and repair is caused by the declarant (such as the Winthrop Declarant's conduct herein of either: failing to remedy the pre–8/25/95 Declaration defects; and introducing defects into the Building), then, the unit owners as a group must pursue the declarant, via the association's litigation powers in §47-244(a)(4). Simply stated, a condominium association and its stream of unit owners must respectively and without any qualification repair a condominium problem and must make the payments therefor, regardless of whether or not the repair is caused by

the declarant's breach of its written promises to just one or more original unit owners.

**(b)    Consistent with this continuity of interests among the successive unit owners, Connecticut Common Law specifically permits the Assignments of such contract claims for damage to property.**    Even though subsequent unit owners have the duty to pay for condominium repairs caused by the declarant's breach of contract with the original unit owners, the issue then presented is whether the condominium association (on behalf of subsequent unit owners) can recover damages in its §47-244(a)(4) representative capacity arising from the declarant's breach of contract with the original unit owners.  The answer is in the affirmative because the original unit owners' right to recover for property damage arising from the declarant's breach of its written promises can be assigned to the subsequent unit owners.  As succinctly and recently reconfirmed in On-Line Technologies v. Perkin Elmer Corp., 141 F. Supp. 2d 246, 253 (D. Conn. 2001) (JBA), which was a patent case that involved breach of contract claims (and also tort claims) for damages to property arising out of a breach of contract, such claims can be validly assigned: "Connecticut law [extending back to Whitaker v. Gavit, 18 Conn. 522 (1847)] permits the assignment of claims for injury to property interests".  (Other Cit. omitted).

Moreover, and similar to the discussion in Paragraph D(6) above regarding the fact that the NHW Act did not displace the 1975 existing state of the Connecticut common law of negligence (Re: the absence of a privity requirement), the previously–discussed two applicable principles of statutory construction likewise confirm that the NHW Act did not supplant the foregoing common law contract rule of assignment of claims (and also the common law tort rule of assignment of claims).  First, pursuant to Rumbin, 254 Conn. at 267 n.8, 757 A.2d at 530 n.8, there is no language indicating that the General Assembly had intended to change the contract or tort common law assignment rule via the NHW Act.  Second, the assignment rule has been a part of Connecticut contract (and tort law) common law well before the 1975 enactment of the NHW Act.  *See, e.g.,* Whitaker, 18 Conn. at 526-27 and 528 (1847).

As a doctrinal corollary to the principle of the continuity of nondivisible common interests

in a condominium with respect to the association's duty to repair and the successive unit owners'
correlative duty to pay therefor, the assignment to the subsequent unit owners of the original unit
owners' NHW Act E/W breach of contract claims for damage to condominium property (*viz.*, that the
improvements were not built as had been promised) is necessarily automatic in the condominium
context. Stated another way, and based on the seminal legal doctrine that with every detriment there
necessarily must a corresponding benefit, because all unit owners (original and subsequent) do have
an unqualified financial obligation to pay for the repair of their condominium, the subsequent unit
owners would thus be automatically entitled to be the original unit owners' assignees of the property
damage claims against the declarant that arose from its breach of a NHW Act E/W. Moreover, it is
important to note that the foregoing automatic assignment of such claims in the condominium context
would not place any additional liability upon the declarant because of the "[r]ule precluding double
recovery", <u>Haynes v. Yale–New Haven Hospital</u>, 243 Conn. 17, 22 n.6, 699 A.2d 964, 967 n.6
(1997), which herein would prohibit multiple recoveries by the original unit owners and subsequent
unit owners. Thus, in any instance, the declarant would only pay the association just once for the
damages award with regard to the condominium, and thus it would be irrelevant to the
payor–declarant who the unit owners are at the time of its payment of an award of damages.

      8.    **Summary**.

         (a)    **The NHW Act**.  In sum, a condominium association is entitled to receive a
full damages award from the declarant for its breaches of NHW Act I/Ws and E/Ws regardless of
whether the association is comprised of only the original unit owners or the subsequent unit owners,
or a combination thereof. Thus, the only issue herein is whether the Winthrop Declarant's breaches
of the NHW Act I/Ws and E/Ws occurred during the First Year. First, as detailed in the 5/19/00 Six
Expert Reports, the breaches of the NHW I/Ws existed *ab initio*, that is, on the first day of each
original unit owner's title ownership (except, with regard to defects which the Winthrop Declarant
introduced into the Building after a particular unit owner took title, then, the First Year would

commence upon the date of completion of the defective improvement, per §§47-117(d)(2) and 47-118(e)(2)). Second, the breaches of the NHW Act E/Ws similarly existed on the first day of each original Winthrop Unit Owner's title ownership (or, on the first day that the defective improvement was completed after an original unit owner took title). Third, the original unit owners or their successors–in–title can recover for a claim of breach of NHW Act I/Ws (because privity with the declarant is not required for a tort claim) and the NHW Act E/Ws (because a contract claim against a declarant for damage to property is automatically assigned by the original unit owners to the subsequent unit owners), but subject, of course, to the rule precluding multiple recoveries among the original and subsequent unit owners. Thus, because the breaches of the NHW Act I/Ws and E/Ws occurred during the First Year, the Winthrop Association is entitled in its §47-244(a)(4) representative capacity to recover for the entirety of the damages (in the amounts it may prove at trial) arising from the breaches of the NHW Act I/Ws and E/Ws.

(b) **The same result applies to breaches of the CIOA I/Ws and E/Ws**. Although the Court addressed the apportionment issue between the original unit owners and the subsequent unit owners only in the context of the NHW Act, nonetheless, the foregoing NHW Act analysis, permitting a full recovery for I/W and E/W claims by an association that is comprised of original and subsequent unit owners, would similarly would apply to breaches of the CIOA E/Ws and I/Ws at §§47-274(a) and 47-275(b). More specifically, because the I/W and E/W provisions of the NHW Act and CIOA are substantively very similar, therefore the same no apportionment result would be applicable to the Winthrop Declarant's breaches of the CIOA I/Ws and E/Ws .

E. **THE SECOND APPORTIONMENT ISSUE (Re: An award of 100% of the damages to the Common Elements arising from the Winthrop Declarant's failure to comply with the E/Ws set forth in the P/B 11/14/95 Letter)**.

1. **The Opinion (pp. 42-44)**. The Court held that the P/B Letter (5/19/00 Exhibit F) did create non–disclaimed E/Ws under CIOA, at §47-274, regarding the eleven items listed (in the eleven paragraphs). (Because the statutory text regarding E/Ws under the NHW Act, §47-

117(a), is substantively very similar as the E/Ws text in CIOA, at §47-274(a), thus, the P/B Letter

E/Ws also constituted NHW Act E/Ws.)  However, because the P/B Letter was appended only to the

Supplement (the "New York Supplement") that was required to be given to Winthrop offerees who

were New York State residents (the "New York Purchasers"), seven of whom eventually became

original purchasers, thus, the Court held (despite the fact the eleven P/B Letter E/Ws only related to

the non–divisible Winthrop common elements) that the Winthrop Declarant's obligation under the

P/B Letter was to be apportioned.  More specifically, the Court reasoned that  because the promises

in the P/B Letter was made just to seven New York Purchasers, and because the text of the New York

Supplement (at p. 8) stated that it was to be only for the benefit of the New York Purchasers,

therefore, the implication was that an award of damages for any breach of the P/B Letter E/Ws would

be apportioned and awarded only to the New York Purchasers. (Opinion, pp. 42-43). (Although the

Court's Opinion refers to six New York original purchasers, the correct number was seven as stated

in Paragraph 7(b)(i) of each Count of the 5/19/00 Complaint.)

> 2.    **The rationale in the primary decision on apportionment, the 1985 North Dakota decision in _Jablonsky v. Klem_, which was relied upon by the Court, is not applicable herein.**    The primary decision on apportionment among condominium unit owners that was cited

by the Court in its Opinion was Jablonsky v. Klem, 377 N.W. 2d 560 (N. Dak. 1985), which was

discussed by the Court in the context of the NHW Act.  (Opinion, pp. 26-27).  In said decision, the

North Dakota Supreme Court upheld the concept of apportionment among unit owners with respect

to an award of damages from a declarant. Because the rationale in Jablonsky was also implicit in the

Court's holding in another section of its Opinion, at pp. 41-42, _viz_., the implication that damages for

a breach of the P/B Letter E/Ws must be apportioned only to the New York Purchasers, it is important

to address said decision in this Section E because the concept of apportionment is inapplicable to any

statutory warranty, express or implied, relating to the common elements under CIOA.

> (a)    **The _Jablonsky_ decision**.    In said decision, 377 N.W. 2d at 569-70,

the North Dakota Supreme Court affirmed the Trial Court's apportionment of the damages  award

on the basis of a two-prong analysis. First, the Supreme Court discussed the fact that some of the unit owners had purchased their units "with notice of the defective retaining wall", which "on-notice" period started on "January 1, 1982 [when] the retaining wall was in such condition that a buyer knew or should have known of the defects in the wall". *Ibid.* Second, it confirmed that, under North Dakota statutory law, the title interests of unit owners in the common elements of a condominium were as "tenants in common", in contrast to an undivided ownership therein. 377 N.W. 2d at 569 n.4. Therefore, the North Dakota Supreme Court held that: (i) once a latent defect becomes patent, the subsequent purchasing unit owners would be denied any recovery for a breach of a condominium declarant's *common law implied* warranty; and (ii) because, under North Dakota statutory law, a unit owner's ownership in the common elements of a North Dakota condominium is as a tenant in common, which is a divisible interest, the award of damages must therefore be apportioned among only the "pre-patent" purchasers who shall then each receive a fractional share of the damages. 377 N.W.2d at 569-70.

(b)    **The First Prong of the *Jablonsky* analysis is inapplicable herein**.

The foregoing latent/patent principle is inapplicable herein because said principle relates only to new home *common law* I/Ws; in contrast, and in contrast herein at issue is the apportionment of the Winthrop Declarant's *statutory* NHW Act and CIOA E/Ws that are principally set forth in the P/B Letter (and also in the Sorrow Rider II and the Building Plans—*See* the discussion in Section C). The rationale for the imposition on a home builder of common law I/Ws (*e.g.*: construction in a workman-like manner; *et al.*) was explained in Chandler v. Madsen, 197 Mont. 234, 642 P.2d 1028, 1031 (1982):

> *Caveat emptor*, which traditionally has applied to sales of real estate, developed at a time when a buyer and seller were in equal bargaining positions. They were of comparable skill and knowledge and each could protect himself in a transaction. In the modern marketplace that equality of position no longer necessarily exists, and a growing number of jurisdictions have abandoned *caveat emptor* in favor of implied warranties where a builder-vendor sells a new residence. (Cits. omitted)

Against this common law backdrop, if a new home purchaser has actual notice of a defect which would otherwise be covered by a vendor–builder's common law I/W, then the I/W is to be excluded because the foregoing rationale underlying the common law erosion of the *caveat emptor* doctrine would be inapplicable in that such an "on-notice" purchaser would have equal knowledge with the seller, and thus (because of such notice) the doctrine of *caveat emptor* would still fully apply to the subject defect. (With respect to this Action, although the NHW Act does have an "on-notice" exclusion to the I/Ws, at §47-118(b), there is no such exclusion in CIOA.)

On the other hand, in contrast to I/Ws (common law or statutory) which are, by definition, implicit/unstated, when there is an affirmative statement made with respect to a fact or a promise about the item being sold, it then becomes an E/W. A purchaser's knowledge of a defect that concerns an E/W item obviously cannot negate the E/W; instead, an E/W can be negated only by the warrantor's explicit written language that clearly withdraws the subject E/W. For example, in order to disclaim or even modify a contract of sale's E/W under the NHW Act, at §47-117(c), there must be a new, post–contract of sale document that is then signed by the purchaser.

Thus, the latent/patent principle governing common law new home I/Ws is entirely inapplicable to a declarant's statutory E/Ws under the NHW Act and CIOA because the protection accorded to a "no notice" new home purchaser via common law I/Ws is simply not needed in the circumstances of an explicitly made promise. Stated another way, once a new home seller's promise (*i.e.*, warranty) moves from being an implicit/unstated promise (an I/W) to being an expressly stated promise (an E/W) to the purchaser, the extent of a purchaser's knowledge of an existing defect obviously would not negate the E/W (which is completely unlike a common law I/W that would be negated by such notice/knowledge).

(c)    **The *Second* Prong of *Jablonsky* is likewise inapplicable: In contrast to the North Dakota condominium statute, in Connecticut a unit owner's interest in the common elements is an undivided interest under CIOA.**    In sharp contrast to the <u>Jablonsky</u> second prong (*viz.*, that the unit owners therein had, under the North Dakota statutes, a tenants in common, and thus divisible, interest in the common elements), CIOA quite clearly states to the contrary that there is allocated

to the units "undivided interests in the common elements". C.G.S.§47-226(a)(I). Similarly, in the

Definitions Section of CIOA, at §47-202(8), the common elements are for the "common ownership

solely by the [unit] owners", and that "the undivided interests in the common elements are vested in

the unit owners". This statutory principle of non–divisible common ownership was reconfirmed in

the CIOA decision of <u>Grey v. Coastal States Holding Co.</u>, 22 Conn. App. 497, 504, 578 A.2d 1080,

1084, *cert. den.* 216 Conn. 817, 580 A.2d 57 (1990). Therein, the Appellate Court stated that under

CIOA the common elements "belonged to [the defendant unit owners] in common with the other unit

owners". *Ibid. Accord*: <u>First National Bank of Stamford v. Hemingway Center Ltd.,</u> 846 F. Supp.186,

189 (D.Conn.1994) (TFGD) (confirming the "common ownership" of the unit owners in the common

elements).   Moreover, as discussed in Paragraph D(7)(b), the rights and duties between the original

and subsequent unit owners is non–divisible under CIOA and under the Winthrop Declaration and

By-laws. Because Connecticut statutory law (CIOA) with respect to the common elements is the exact

opposite of the North Dakota statutory law on which the second prong in <u>Jablonsky</u> was critically predicated,

therefore, for this second reason the <u>Jablonsky</u> apportionment holding is inapplicable in Connecticut.

    3.    **In Connecticut, the concept of apportioning an award of damages would
not apply to the common elements of a condominium**.    In the sole appellate level decision in

Connecticut with respect to the validity of disclaimers of warranties under the NHW Act, <u>Cafro v.

Brophy</u>, 62 Conn. App. 113, 123 n. 6, 774 A.2d 206, 213 n.6, *cert. den.* 256 Conn. 932, 776 A.2d 1149

(2001), the Appellate Court cited with  approval the decision in <u>Starfish Condominium Association

v. Yorkridge Service Corp.</u>, 295 Md. 693, 458 A.2d 805 (1993). In <u>Starfish Condominium</u>, the Maryland

Court of Appeals held, 458 A.2d at 812-13, that even if there were only one original unit owner out

of the 36 original unit owners still remaining in a lawsuit against the condominium declarant, nevertheless,

there would be no apportionment of a damages award for a breach of common elements I/Ws by the

declarant; and, therefore, said remaining unit owner could be awarded 100% (not 1/36th) of the damages

to the common elements. As the Maryland Court of Appeals explained, 458 A.2d at 812-13:

Because the § 10-203 [Maryland statutorily] implied warranties run only to original purchasers of condominium units, it might be argued that each original purchaser at Starfish would be entitled to claim for only 1/36th of any damages. However, the few cases which have considered this question are to the contrary. *Stony Ridge Hill Condominium Owners Ass'n v. Auerbach*, 64 Ohio App.2d 40, 410 N.E.2d 782 (1979) involved a 24 unit condominium. Representations had been made by the developer to only four of the unit owners that the roof of the building was a " 'twenty-year roof.' " Suit was brought by the council of unit owners which had statutorily conferred standing. The court concluded that "[e]ach person who purchased a condominium unit, as a result of the misrepresentation, has a right to have the whole damage to the entire common area of the building remedied and completely satisfied." *Id.* at 43, 410 N.E.2d at 785. Otherwise, "[p]ayment by defendants of only one-sixth of the roof damage, representing the share of four unit owners, and the consequent repair of only one-sixth of the roof would still leave the roof in the same leaky condition, and would be the equivalent of giving plaintiff no legal remedy or relief whatever." *Id.* at 44, 410 N.E.2d at 786. Of similar effect is *Drexel Properties, Inc. v. Bay Colony Club Condominium, Inc.,* 406 So.2d 515 (Fla.App.1981). That case was a class action brought by the unit owners association and by representative unit owners based, *inter alia,* upon breach of a judicially created implied warranty on new dwellings which ran only to original purchasers.

The [*Drexel Properties*] court held:

> that as to common elements, the [plaintiffs] may recover the entire damages on either [an implied warranty or negligence] theory, albeit the subsequent or remote purchasers will benefit thereby. To conclude otherwise and apportion the damages would penalize the original purchasers. In order for appellees to receive the benefit of their bargain and be made whole, the amount of damages awarded must equal the sum necessary to correct the condition. [*Id.* at 519-20.]

In the case at hand, one or more of the original purchasing unit owners in Starfish could directly have sued for breach of § 10-203 implied warranties as to the common elements and could have sought the entire damages to the common elements. (Brackets in the original).

Thus, as said concept is applied herein, when each one of the seven New York Purchasers read in the P/B Letter, for example at Paragraph 7, the promise that the common elevator would have A.D.A. upgrades and that "[a]lready installed were ... A.D.A. compliant controls", they would reasonably expect the following: that said items would be 100% (not just 7/47ths, that is, 7 of the 47 total Winthrop Units, or 14.9%) installed in order that the elevator (regardless of who was the passenger, whether or not he was a New York Purchaser) would be fully A.D.A. compliant and therefore properly level at each floor so that every person in a wheelchair would be able to roll straight off the elevator. (However,

per Otis Elevator, the equipment enabling A.D.A. compliant leveling was in fact never installed and the elevator often has an inch or more gap when it attempts to level. *See* 5/19/00 Exhibit PP, at p. 1). Another illustration of the impracticality of fractionalizing the P/B Letter E/Ws is the P/B Letter E/W in Paragraph 1 that "the existing basement floor is to be removed and a new concrete floor is to be poured". Certainly, pouring only 14.9% of a new basement concrete floor would not comply with this E/W (even assuming the Winthrop Declarant were somehow able to determine how to redo just said 14.9% portion of the floor, which is located in eight different rooms and two hallways in the basement) .

      4.    **Analysis**.    As the Court held (Opinion, pp. 41-43 and 50-51), the P/B Letter did constitute E/Ws and that "defendants did not specifically disclaim" the P/B Letter E/Ws (*Id.,* at p. 44). Because the eleven P/B Letter E/Ws were the Winthrop Declarant's clearly- stated "affirmation of … [a] promise [of work to be done or that has been done]", C.G.S. §47-117(a)(1) and §47-274(a)(1), and because the P/B Letter E/Ws were not disclaimed (and moreover, as discussed previously, only the NHW Act permits E/W disclaimers), thus they did constitute both NHW Act E/Ws and also CIOA E/Ws.

      Having therefore established that the P/B Letter E/Ws constituted undisclaimable CIOA E/Ws and non–disclaimed NHW Act E/Ws, the next issue is whether or not there should be any apportionment of the P/B Letter E/Ws. First, in the Winthrop Declarant's seminal statement which was in the introductory portion of the P/B Letter, it had promised without qualification that it would undertake at a minimum all of the P/B Letter's eleven E/W items: "The [Winthrop Declarant's remedial] work *will include* but is *not* limited to: … ." (Emphasis supplied).

      In addition, the Winthrop Declarant cannot point to any aspect of the P/B Letter or to any other document which states that the eleven P/B Letter E/W items would be implemented only on a fractionalized basis. Furthermore, this absence of any such language from the Winthrop Declarant is confirmed by its many years of actual conduct at the site in its implementation of the P/B Letter E/Ws, which

was done on a 100% basis and not whatsoever on any sort of a fractionalized basis. For example, with regard to two of the P/B Letter E/Ws: (i) Paragraph 2 (Re: the exterior brickwork)—in no portion of the extensive discussion that was held with regard to the limited exterior brick remedial work (including the limited waterproofing) that had already been done, did the Winthrop Declarant's principal person, Arthur Collins, II, ever state to the Winthrop Association's Board (of which he was a member) at its Meeting on 9/17/98 that the work had been done on a fractionalized basis (*See* 5/19/00 Exhibit L, at pp. 2, 4 and 5); and (ii) Paragraph 4 (Re: the Roof)— with regard to the promise that "the building will receive a new roof system", it is uncontested that 100% of a new roof was in fact installed (albeit improperly—*See* Exhibit Y, at pp. 3-6) by the Winthrop Declarant.

Moreover, there is a further matter which confirms that the concept of apportionment could not applicable to the P/B Letter E/Ws. More specifically: (i) the Winthrop Declarant would not be able to determine the precise fractional percentage allocable to the New York Purchasers until it sold its last Winthrop Unit, which occurred when Unit Nos. 33 and 43 were simultaneously sold via the Winthrop Declarant's 4/24/03 Warranty Deed, and only then could it finally know the exact number of New York Purchasers and thus be able to determine the exact fractional amount attributable to the New York Purchasers; and (ii) upon said 4/24/03 final sale, the Winthrop Declarant would only then be able to implement the correct percentage of its fractional P/B Letter E/W remedial work, but it is undisputed that it had already terminated its remediation work in 1999 and had left the site. Therefore, the amount of remedial work actually done by the Winthrop Declarant with respect to the P/B Letter E/Ws could not have been predicated upon any kind of fractionalization. In sum: (i) the case law does not support apportionment only to the New York Purchasers; (ii) the New York Purchasers did reasonably expect that 100% of each P/B Letter E/W item was to be accomplished, in contrast to a wholly unacceptable fractional portion thereof; and (iii) as confirmed by its own conduct, the Winthrop Declarant never in fact did any of the P/B Letter E/W work on the basis of any fractionalization. Therefore, apportionment of the P/B Letter E/Ws is not appropriate.

F.     **CONCLUSION**.     A matter that the Court focused on several times was its perception that the Winthrop Association and its Unit Owners had expected to receive the 1938–constructed Building in a "like–new condition". (Opinion, pp. 42, 43 and 60). Instead, throughout this Action, including as was stated in the 5/19/00 Complaint, the sole expectation of the Winthrop Association and its Unit Owners has been to have the Building and the Units (as in fact would be universally expected regarding any residential building and its dwelling units) in a safe (*e.g.*, no Fire Code violations), warm (with consistent heat and hot water, from systems that were in compliance with the Building Code) and dry (free from any significant water infiltration) condition.   (As detailed in Exhibit Y, and as confirmed by the experts' Photographs Nos. 1-9 in Exhibit UU, the water infiltration is very significant, and it causes a major disruption to many Unit Owners during each major rainstorm.)  In other words, it has been the reasonable expectation that, as a result of the Winthrop Declarant's clear promises in the P/B Letter E/Ws, the Sorrow Rider II, and the Building Plans, and as a further result of the undisclaimed NHW Act and CIOA I/Ws, that the Building (to use the Winthrop Declarant's own words from its marketing brochure) would be properly repaired: "that prewar building on West Elm [which] is being thoughtfully updated". (Exhibit G, at p. 2).  However, as detailed in the completely–unrebutted 5/19/00 Six Expert Reports and in many of the other 5/19/00 Exhibits, what the Winthrop Association and its Unit Owners did in fact receive was a Building and Units which were not in a safe, warm and dry condition.

     **WHEREFORE**, the Winthrop Association respectfully requests that those portions of the Decision  which are appealed herein be reversed.

• DATED May 7, 2004 at Greenwich, Connecticut.

PLAINTIFF

By: _____
Philip H. Bartels

For:    Holland, Kaufmann & Bartels, LLC
        Its Attorneys
        289 Greenwich Avenue
        Greenwich, CT 06830
        (203) 869-5600 - (FAX) 869-4648
        Federal Bar No. ct06836

## CERTIFICATION

THIS IS TO CERTIFY that a copy of the foregoing shall be mailed this day, postage prepaid, to all Counsel of Record, and to the Mediator, on May 7, 2004:

Jane I. Milas, Esq.
Garcia & Mills
44 Trumbull Street
New Haven, CT 06510-1001

Richard M. Dighello, Jr., Esq.
Updike, Kelly & Spellacy
One State Street
P.O. Box 231277
Hartford, CT 06123-1277

Thomas W. Witherington, Esq.
Cohn Birnbaum & Shea, PC
100 Pearl Street
Hartford, CT 06103-4500

Robert A. Rubin, Esq.
(The Parties' Mediator)
Postner & Rubin
17 Battery Place
New York, NY 10004-1101

_____
Philip H. Bartels

U:\PHB\CONDOS\WINTHROP\Memorandum of Law.wpd