UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

_____          :
                                           :
WINTHROP HOUSE ASSOCIATION, INC.,          :          Civil Action No.
                                           :          300-CV-328 (AHN)
            Plaintiff,                     :
                                           :
v.                                         :
                                           :
BROOKSIDE ELM ASSOCIATES LIMITED           :
PARTNERSHIP,                               :
NESK CORPORATION,                          :
COMPETROL REAL ESTATE LIMITED,             :
OLAYAN AMERICA CORPORATION                 :
COLLINS ENTERPRISES, LLC,                  :
COLLINS PROPERTIES, LLC,                   :
PREISS/BREISMEISTER P.C.,                  :
NEIL H. SMITH,                             :
EDMOND A. KAVOUNAS,                        :
ARTHUR COLLINS II,                         :
FREDERICK A. PREISS, and                   :
COLLINS CLOSE, LLC,                        :
                                           :
            Defendants.                    :
                                           :          July 6, 2004
_____          :


### MEMORANDUM OF LAW OF BROOKSIDE ELM ASSOCIATES LIMITED PARTNERSHIP, COLLINS PROPERTIES, LLC, COLLINS ENTERPRISES, LLC AND ARTHUR COLLINS, II IN OPPOSITION TO PLAINTIFF'S LOCAL RULE 72.2 OBJECTION

1

## I.  Introduction and Procedural Background

On February 18, 2000 Winthrop House Association, Inc. ("the Association") filed an action against, inter alia, Brookside Elm Associates Limited Partnership ("Brookside Elm"), Collins Properties, LLC ("Collins Properties"), Collins Enterprises, LLC ("Collins Enterprises") and Preiss/Breismeister, P.C. ("Preiss/Breismeister") relating to alleged construction defects and/or code violations at Winthrop House in Greenwich, Connecticut.  The afore-mentioned parties agreed to submit the matter to mediation, and on May 20 and May 21, 2001 the parties met with Attorney Robert Rubin, the chosen mediator,  for the purposes of touring Winthrop House and mediating the issues raised by the Association in its Amended Complaint.

During the course of mediation certain questions arose relating to the exclusion of various alleged warranties.  In order to move the mediation forward, the parties agreed to submit the following question to the Magistrate Judge:

Did the Declarant properly exclude the implied warranties and/or express warranties? On June 27, 2001 the Court referred the matter to the Magistrate Judge.

The parties filed position papers under seal on August 7, 2001.  The parties filed reply briefs on September 18, 2001.  Plaintiff's request for permission to file a supplemental memorandum of law was granted, and the plaintiff filed its supplemental memorandum on January

2

10, 2003.  The defendants filed their reply on January 20, 2003.

Oral argument was held on February 6, 2003.  On February 27, 2003 plaintiff filed a request for permission to file a supplemental memorandum of law, which request was granted. The plaintiff and defendants filed supplemental briefs on March 28, 2003 and April 17, 2003, respectively.

On December 19, 2003 the Magistrate Judge issued a detailed opinion on the question submitted by the parties.  The plaintiff has objected to this opinion in part and the defendants hereby file their memorandum in opposition to the plaintiff's objection.

## II.  Factual Background

For purposes of the Magistrate Judge's ruling on the question presented by agreement of the parties, Brookside Elm Associates Limited Partnership, Collins Properties, LLC, Collins Enterprises, LLC, and Arthur Collins, II (referred to herein collectively as "the defendants") submitted the following:

Position paper dated August 7, 2001;
Reply Brief Dated September 18, 2001;
Defendants' Reply to Plaintiff's Supplemental Memorandum of Law, dated January 20, 2003;
Defendants' Reply to Plaintiff's Supplemental Memorandum of Law, dated April 11, 2003.

3

These briefs contained a detailed recitation of the factual background and legal argument related to the issue submitted to the Magistrate Judge. The plaintiff also submitted four separate briefs setting forth in detail its recitation of the facts and legal arguments with respect to the issue before the Magistrate Judge.

The briefs of the plaintiff and defendants, as well as the oral argument held on February 6, 2003, constitute the evidentiary record underlying the Court's ruling. The defendants rely on the detailed discussion of the facts and the law contained in their briefs submitted to the Court, and incorporate in the present memorandum the facts and legal analysis contained therein. To the extent necessary to address specific issues raised by the plaintiff in its objection to the Court's Ruling, specific facts will be referenced in the following sections.

It must be noted that the parties both agreed to submit the question set forth in the previous section to the Court for a ruling based on the set of documents given to the various purchasers or potential purchasers of condominium units at Winthrop House. The documents given to the purchasers which were submitted by the parties to the Court consisted of the following:

> Public Offering Statement ("POS") (attached as Exhibit A to the defendants' Position
>     Paper dated August 7, 2001), given to all prospective purchasers of a unit;
> New York Supplement ("the Supplement") (attached as Exhibit D to the defendants'

4

Position Paper dated August 7, 2001), given only to prospective purchasers residing in New York State along with the POS.

In addition to the above-referenced documents, the plaintiff also referred to, and relied on a specific Purchase Agreement between Brookside Elm, as Seller, and Jerry W. Sorrow and Pamela B. Sorrow, as Buyers, along with two Riders thereto. The Sorrow Purchase Agreement and Riders also were considered by the Court in its analysis.

## III.    Argument

### A.    The Opinion Must not be Set Aside Unless Clearly Erroneous or Contrary to Law.

Local Civil Rule for Magistrate Judges 72.1 sets forth the general jurisdiction and duties of Magistrate Judges. It provides, inter alia:

(C) The Magistrate Judge shall have authority to assist the Judges of this Court in the conduct of civil and criminal proceedings in all respects contemplated by 28 U.S.C. Section 636 (b)-(c), including, but not limited to, exercise of the following duties:

(1) The review and any necessary hearing of, and issuance of recommended decision on, any motion for injunctive relief, to suppress evidence, to permit or to refuse class action maintenance, to dismiss or for summary judgment, or any other similar application in civil or criminal cases potentially dispositive of a claim or defense;
(2) The review, any necessary hearing and determination of nondispositive motions, including buy not limited to, those relating to discover and other matters of procedure.

5

Pursuant to Local Civil Rule for Magistrate Judges 72.1 (C)(2), the Magistrate Judge has the power to <u>hear</u> and <u>determine</u> any nondispositive motions. This is in contrast to 72.1(C)(1), which gives the Magistrate Judge the power to issue a <u>recommended</u> decision with respect to the specific applications listed.

Section 636(b)(1), title 28, U.S.C. provides, <u>inter</u> <u>alia</u>:

> (A) a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider a pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.

Pursuant to Local Rule 72.2(b) and 28 U.S.C. §636(b)(1)(A) any pretrial matter, with the exception of those listed in §636(b)(1)(A), may only be reconsidered by the Court where it has been shown that the Magistrate Judge's Order is clearly erroneous or contrary to law. <u>See</u> <u>also</u>, <u>Thomas E. Hoar, Inc. V. Sara Lee Corp.</u>, 900 F.2d 522, 525 (2d Cir. 1990); <u>Vaquillas Ranch Co., Ltd. V. Texaco Exploration and Production, Inc.</u>, 844 F.Supp. 1156, 1162 (S.D. Tex. 1994) (Whether motion is "dispositive", subject to de

6

novo review by the district court, refers to the list of motions under §636(b)(1)(A) that magistrate judge may not determine; listing reflects Congress' intent that only those motions listed by construed as dispositive.)

"A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Hudson v. General Dynamics Corp., 186 F.R.D. 271, 273 (D. Conn. 1999) (citations omitted). The plaintiff has failed to show that the Opinion of the Court is clearly erroneous or contrary to law and the Court, therefore, should refuse to set aside the Opinion. Even if the Court were to review the portions of the opinion objected to de novo, for the reasons set forth in the following sections the Opinion of the Magistrate Judge should be accepted.

**B.** **The Documents at Issue with Respect to the Alleged Warranties are Undisputed and were Fully Analyzed by the Magistrate Judge; The Findings are not Clearly Erroneous.**

The present matter is somewhat unusual procedurally in that the parties jointly requested that the Court review a set of documents relating to the public offering of condominium units and give an opinion on the extent to which these documents properly excluded implied or express warranties. The opinion clearly shows that the Court

7

reviewed and considered <u>all</u> the documents relied on by either the plaintiff or the

defendants.  Opinion, pp. 5-20.  The plaintiff has not raised any issue with respect to the

evidentiary record reviewed and analyzed by the Court.  The plaintiff simply doesn't like

the conclusions drawn from the documents.  The parties engaged in extensive briefing and

the Opinion shows the thoroughness with which the Court approached this matter.  The

point of this process was to aid in the mediation that was underway.  The plaintiff, through

its requests for supplemental briefing and now broad brush attack on the Opinion, has

defeated the efficacy of the process originally anticipated.  The Court should accept the

Opinion.

**C.**     **<u>The Conclusions of Law to Which the Plaintiff Objects are not Contrary to
Law.</u>**

**1.**     **<u>The Court's Conclusion that the Association and Subsequent
Purchasers do not meet the Statutory Definition of "Purchaser" under
the New Home Warranty Act is not Contrary to Law.</u>**

The Association challenges the Court's conclusion that the New Home Warranty

Act ("NHWA") does not apply to the Association.  The basis for the Association's

challenge is that under the Common Interest Ownership Act ("CIOA"), the Association

can act in a representative capacity.  The case law cited by the Association does not

8

support this position, however.

The provisions of the New Home Warranties Act are found at General Statutes §§ 47-116 et seq. Pursuant to §47-117, express warranties can be created only by a "vendor" and run only to a "purchaser."  Vendor is defined as:

> any person engaged in the business of erecting or creating an improvement on real estate, any declarant of a conversion condominium, or any person to whom a completed improvement has been granted for resale in the course of his business.

General Statutes §  47-116.

"Improvement" in this context means "any conversion condominium unit being conveyed by the declarant and any fixture or structure which is made a part thereof at the time of...conversion by any building contractor, subcontractor, or declarant."  General Statutes § 47-116.

Under § 47-116 "purchaser" is defined as "the original buyer, its heirs or designated representatives".  The plaintiff Association is not a "purchaser" under the Act.  While the NHWA defines "vendor" to include, among others, the declarant of a conversion condominium, the NHWA does not define "buyer" to include the condominium association.  Since the legislature specifically referred to a declarant in the definition of vendor, the legislature could have defined "purchaser" to include an

9

Association but did not do so.

The plaintiff Association attempts to graft itself onto the definition of "purchaser" in the NHWA by relying on §47-244(a) of CIOA, which sets forth certain "powers" granted to the Association. The plaintiff's argument is not on point. The issue relevant to the present matter is whether any NHWA warranties (express or implied) were created between vendor and purchaser. Since the Association is not defined as a purchaser under the NHWA, and since nothing in CIOA indicates it applies to the NHWA, the NHWA does not apply to the Association, as the Court correctly ruled. CIOA has its own set of warranty provisions, which will be discussed in the following sections.

The cases cited by the plaintiff are irrelevant to the Court's ruling that the Association is not a "purchaser". Candlewood Landing Condominium Association, Inc. v. Town of New Milford, 44 Conn. App. 107 (1997), only deals with the issue of whether a condominium association had standing to challenge a municipal tax assessment of the common areas of a condominium. Caswell Cove Condominium Association, Inc. v. Milford Partners, Inc., 58 Conn. App. 217 (2000) deals with an action to quiet title in certain land that the successor declarant sought to withdraw from the common interest community. Neither case raises any issue with respect to the correctness of the Court's

10

ruling.  The Court should decline to set aside the Opinion.

2.  **The Court's conclusions with respect to Implied Warranties under CIOA are not Contrary to Law.**

The Court found that implied warranties may be excluded or modified under CIOA (C.G.S. §47-276).  The plaintiff Association does not object to this conclusion.  The Association, however, disagrees with the Court's conclusion that in this particular matter, the defendants disclaimed or excluded the implied warranties.[1]

C.G.S. §47-276 provides as follows:

> (a) Except as limited by subsection (b) of this section with respect to a purchaser of a unit that may be used for residential use, implied warranties of quality: (1) May be excluded or modified by agreement of the parties; and (2) are excluded by expression of disclaimer, such as "as is", "with all faults", or other language that in common understanding calls the purchaser's attention to the exclusion of warranties.

> (b) With respect to a purchaser of a unit that may be occupied for residential use, no general disclaimer of implied warranties of quality is effective, but a declarant may disclaim liability in an instrument signed by the purchaser for a specified defect or class of defects or specified failure to comply with applicable law, if the defect or failure entered into and became

---

[1]Throughout its Memorandum in Support of its Local Rule 72.2(a) Objection the Association refers to CIOA and the NHWA as through they are interchangeable.  To the extent the Association discusses the requirements of the NHWA with respect to disclaimers of warranties, the defendants do not discuss these requirements in the present memorandum, as the Court correctly ruled that the NHWA does not apply in the present matter.

a part of the basis of the bargain.

There is little caselaw in Connecticut interpreting the express or implied warranty provisions of CIOA. Those few cases dealing with express or implied warranties under CIOA generally have considered statue of limitations issues or factual questions relating to breach of warranty, and not creation of, or disclaimers of warranties.

Connecticut courts have recognized that General Statutes §§47-274 and 47-275 are based on the Uniform Common Interest Ownership Act ("the Uniform Act"). Ward v. TRC Realty Corp., 1992 WL172142 (Conn. Super.)pp.8-9. (Copy attached as Exhibit A). The official comments to §4-115 of the Uniform Act, dealing with exclusion or modification of Implied Warranties of Quality gives the following example of an effective disclaimer of implied warranties:

> For example, the declarant of a conversion common interest community might, consistent with this subsection, disclaim certain warranties for "all electrical wiring and fixtures in the building, the furnace, all materials comprising or supporting the roof, and all components of the air conditioning system."

Uniform Common Interest Ownership Act §4-115, Comment 4, 7 U.L.A. 635 (Rev. 1994).

The disclaimers contained in the present matter are far more extensive and  detaile

d than

12

the

langua

ge

found

to be

an

effectiv

e

disclai

mer in

the

official

comme

nts to

the

Unifor

m Act.

13

The gravamen of the Association's challenge to the Court's ruling appears to be simply that the Association does not agree that the language contained in the documents reviewed by the Court constitute effective disclaimers of implied warranties under CIOA. Plaintiff's Memorandum of Law, p. 14.  The discussion at pages 3 through 20 of the Opinion sets forth in great detail the sections of the various documents analyzed by the Court relating to the warranty exclusion issues.  The plaintiff does not challenge the applicability of any of the referenced documents to the issue at hand.  The Association simply doesn't like the result of the Court's analysis.  At pages 46 through 57 of the Opinion the Court provides an extensive and exhaustive analysis of case law relating to disclaimers or exclusion of implied warranties.  The plaintiff does not discuss the Court's analysis but merely dismisses it, choosing to rely on the decision in <u>Cafro v. Brophy</u>, 62 Conn. App. 113 (2001) and <u>Emlee Equipment Leasing v. Waterbury Transmission, Inc.</u>, 31 Conn. App. 455 (1993). Plaintiff's Memorandum of Law, pp. 16-19.

In its analysis the plaintiff again mixes the NHWA and CIOA.  The <u>Cafro</u> case involved the NHWA, which the Court correctly found was not applicable to the present question to be decided.  Further, <u>Cafro</u> is readily distinguishable from the present case in other respects.

14

In <u>Cafro</u> the plaintiffs were purchasers of a single family home to be constructed and sold by the defendant.  The sales agreement for the property stated that

> the buyer accepts home without any warranty express or implied except for the following: seller shall warranty for a period of one year, the structural integrity of [the] residence and that the major mechanical systems are operational.

<u>Cafro</u>, <u>supra</u>, p. 116.

The defendant substituted the word "frame" for the word "integrity" when he signed the agreement, and the change was agreed to by the plaintiffs.

The <u>Cafro</u> Court held that the attempt to disclaim express warranties failed because the only disclaimer language was in the sales contract.  The Court held that pursuant to §47-117(c) language in the contract of sale alone would not be a sufficient disclaimer of express warranties.

The Court in <u>Cafro</u> also found that the disclaimer was ineffective pursuant to §47-118(d) because the language did not specify what was being excluded but focused instead on what was being warranted.

Unlike the language in <u>Cafro</u> found only in a sales agreement, the warranty disclaimers in the present case are contained in offering statements and limited warranty forms, as well as in the purchase agreements.  Unlike the situation in <u>Cafro</u> which dealt

15

with new construction, the present matter involves an old building, the condition of which was fully disclosed to the prospective purchasers. Unlike in <u>Cafro</u>, the language of the POS describes in detail the various Winthrop House systems and components for which no express or implied warranties are given. The purported disclaimer in <u>Cafro</u> falls far short of the information given to and signed off on by Winthrop House purchasers.

The Court also correctly found that the <u>Emlee Equipment</u> case is not relevant. Opinion, p. 58. Emlee involves an equipment finance lease. The defendant lessee raised the issue of the unconscionability of several clauses of the lease, among them an accelerated payment clause and a disclaimer of warranty clause. The clauses were governed by and interpreted in accordance with Article 2 of the Uniform commercial Code (<u>Id</u>. at 461) as adopted in Connecticut, and Article 2A of the Uniform Commercial Code relating to leases of goods. <u>Id</u>. at 466.

The court in <u>Emlee</u> found that the clauses at issue were not unconscionable. The <u>Emlee</u> court's analysis, however, was based on the applicable statutory framework of Connecticut's version of the Uniform Commercial Code. There is nothing in <u>Emlee</u> which addresses or has any bearing on an analysis of warranty disclaimers under CIOA or under the NHWA. Nor does <u>Emlee</u> recognize or address any applicability of its analysis to these

16

statutes.  Plaintiff has not presented any credible analysis supporting its objection to the

Court's ruling and the ruling should be accepted.

      **3.**      **The Court's holding with respect to the Sorrow  Rider II, that it does not create the unconditional express warranties claimed by the Association, is not contrary to law.**

      The Sorrow Rider II is an attachment to a purchase agreement between

Brookside Elm and Jerry and Pamela Sorrow, the purchasers of Unit 55 in Winthrop

House.  The Sorrow Rider II was attached only to the Unit 55 purchase agreement.  The

Sorrows closed on their unit on May 3, 1996, a certificate of occupancy having been

issued for unit 55 on May 2, 1996.  The Sorrows have since sold their unit and no longer

reside at Winthrop House.

      The Association attempts to argue that it is a third party beneficiary of all the

provisions of the Sorrow Rider II, and goes on  from there to argue that the Sorrow Rider

II creates unconditional expansive "express warranties" for the benefit of the Association.

Plaintiff's Memorandum of Law, pp. 20-22.  The Opinion correctly holds that the

Association is not a third party beneficiary of the Sorrow  Rider II, and that the

Association's interpretation of the scope of the Sorrow  Rider II is not supported by the

plain common sense language of the rider itself.  Opinion, pp. 42-45.

17

There is nothing in the purchase agreement between the Sorrows and Brookside Elm or the Rider II that even suggests Brookside Elm intended that the Association could enforce the terms and conditions of, and that the Association would be bound by the terms and conditions of, the purchase agreement and rider. The purchase agreement states that the terms of the Agreement apply to the parties to the Agreement, i.e., Brookside Elm and the Sorrows, their heirs, executors, administrators, successors and any assigns permitted by prior written consent. Exhibit QQ to plaintiff's First Amended Complaint, para. 20. The Association is not made a third party beneficiary of the agreement.

As the Court correctly found, the only sections of Rider II which purport to run to the Association are paragraph 7, sections (a), (b), and (e). These sections state that any roof warranty provided by the roofing company shall run to the Association; any brickwork warranty provided by the contractor shall run to the Association; any boiler or heating system warranties provided shall run to the Association. As anyone familiar with construction knows, contractors performing certain work are often required to provide a warranty for materials and/or labor for their work. These warranties usually are provided to the owner of the property, even if the contractor or subcontractor did not contract directly with the owner for the work. In this case, any labor or material warranties would

name the Association.  For example, a roof warranty was provided to the Association by GS Roofing Products Company, Inc.  Ex. F to Brookside Elm's Position Paper.  This language relied on by the Association, thus, relates only to any labor or material warranties provided by contractors, as the Opinion correctly found.  Opinion, pp. 43-45. The plaintiff attempts to torture the plain meaning of the language of the Rider II to confer warranty rights on the Association which simply do not exist.

The cases cited by the plaintiff in support of its claim that the Association is a third party beneficiary of the Sorrow Rider II in its entirety do not, in fact, support  the plaintiff's claim.  Plaintiff's Memorandum of Law, p. 20.  "The proper test to determine whether a contract creates a third-party beneficiary relationship is whether the parties intended to create a direct obligation from one party to the contract to the third party." Delacroix v. Lublin Graphics, Inc., 993 F.Supp. 74, 83 (D.Conn. 1997) (citing, Gateway Co. v. DiNoia, 232 Conn. 223, 230-31(1995), among other cases cited).  As the Court correctly held, there is nothing in the Sorrow Rider II which indicates any intention to make the Association a third party beneficiary of the agreement.  The rider simply lists certain contractor- provided warranties which, if in fact provided by the contractors,

19

would run to the Association.  The Court's opinion is in full accord with the language of the agreement and is not contrary to law.  It should be accepted.

    **4.**    <u>**The Court's conclusions with respect to the application of the NHWA to subsequent purchasers are not contrary to law**</u>**.**

        At pages 22 through 31 of its Memorandum of Law the plaintiff discusses the application of the NHWA to subsequent purchasers.  This issue arises because many of the original unit owners have sold their units and no longer reside at Winthrop House.  As the Court correctly held, under Conn. Gen. Stat. §47-117, express warranties run from "vendor" to "purchaser."  "Vendor" is defined to include the declarant of a conversion condominium.  "Purchaser" is defined to mean the original buyer, his heirs, or his designated representatives. Conn. Gen. Stat. §47-116.  Under CIOA, Conn. Gen. Stat. §47-274(c),  a conveyance of a unit transfers to the purchaser all express warranties of quality made by previous sellers only to the extent such a conveyance would transfer warranties pursuant to Conn. Gen. Stat. §47-116, <u>et</u> <u>seq</u>.   And under §47-119, warranties are not transferred to subsequent purchasers except in the case of a vendor conveying an improvement to an intermediate purchaser to evade the provisions of the NHWA, a situation not applicable here.

Plaintiff attempts to evade the clear language of the statute by means of the tortured interpretation of case law found at pages 22 through 31 of its Memorandum of Law. The case law cited by plaintiff does not support its position, however.

Cashman v. Calvo, 196 Conn. 509 (1985), relied upon by the plaintiff, deals with warranty claims between a builder and the original home buyers. The case does not deal with or address any issue relating to subsequent purchasers. Plaintiff attempts to read into the Cashman case some sort of holding to the effect that there is no limitation on who can claim the benefit of a warranty under the NHWA. The only limitation is that the warranty claim must arise in the "First Year and during the original owner's ownership." Plaintiff's Memorandum of Law, p. 24. There is nothing in either the NHWA or the case law that supports this novel interpretation. Further, this interpretation of the NHWA was not set forth by the plaintiff in the extensive briefs submitted by the plaintiff to the Magistrate Judge. The Court should decline to consider arguments not raised below. Anna Ready Mix, Inc. v. N.E. Pierson Const. Co, Inc., 747 F. Supp. 1299 (S.D.Ill. 1990).

Coburn v. Lenox Homes, Inc., 173 Conn. 567 (1977), also relied upon by plaintiff, is likewise unsupportive of plaintiff's position. Coburn involved, among other issues, a claim brought under Conn. Gen. Stat. §52-563a, which is now §47-121 of the

21

NHWA. Section 47-121 provides that the issuance of a certificate of occupancy carries an implied warranty to the purchaser of any newly constructed single-family dwelling from the vendor who constructed it that the vendor has complied with the building code or the customary application and interpretation of the building code. The court, in interpreting the application of 47-121, held that the implied warranty ran from the vendor to the person who purchased the home from the vendor, and not to subsequent purchasers. Coburn, 173 Conn. at 568-569. The holding in Coburn, thus, further supports the Court's Opinion with respect to the applicability of the NHWA and CIOA to subsequent purchasers, and completely defeats the novel interpretation the plaintiff puts forth.

At pages 30-31 of its Memorandum of Law plaintiff attempts to make some sort of argument to the effect that successive unit owners may claim the benefit of warranties under the NHWA and CIOA because the original unit owners "assigned" their right to recover for property damages." This is a novel theory that was not argued or even presented below and the Court should decline to consider any argument raised now for the first time. Furthermore, this argument has nothing to do with the issue presented to the Magistrate Judge for decision, and the Court, therefore, should decline to consider it.

Even if the Court were to consider this argument, there is absolutely no evidence in the record with respect to any purported "assignment" of warranty claims. Moreover, plaintiff cites no case law in support of its claim that the benefits of implied or express warranties, and any claims arising thereunder, can be assigned. The case relied on by the plaintiff, On-Line Technologies v. Perkin Elmer Corp,, 141 F. Supp. 2d 246 (D. Conn. 2001), is irrelevant to the present issue. On-Line Technologies involves a suit for patent infringement and related torts. The case involved, among other issues, a technology transfer agreement by which one company granted another a permanent nonrevocable license to its technology developments and future technology developments for a five year period. The technology transfer agreement specifically provided for an assignment of all contracts, claims, causes of action, and right to sue based on the technology. There is absolutely nothing in the case that has any bearing on the present matters before the Court. Plaintiff, thus, raises no arguments justifying any modification of the Court's Opinion.

**5.    The Court's conclusion that the certain listed express warranties created in the New York Supplement do not run to a purchaser who did not receive the New York Supplement is not contrary to law.**

The Court held that the Preiss Breismeister letter dated November 14, 1995 (Exhibit F to the First Amended Complaint) created a promise to the six New York purchasers to make "improvements to correct defects" in the eleven specific items listed. Opinion, p. 46. It is undisputed that the Preiss Breismeister letter was only given to the purchasers from New York as part of the New York Supplement. Further, the Court correctly found that the New York Supplement clearly stated that it was not directed to, nor shall it create any rights in or obligations to anyone other than a New York purchaser. Exhibit D to Brookside Elm's Position paper, section B, p. 8.

The plaintiff attempts to circumvent the fatal flaw that the alleged "warranties" on which it relies were not even made to most of the unit owners by arguing that all unit owners must be given the benefit of these claimed warranties because any other remedy would be "absolutely impossible to implement." This, then, is the context in which the "apportionment" issue, discussed at pages 332 through 40 of Plaintiff's Memorandum of Law, arises.

No Connecticut caselaw has been found on the issue of whether or not damages for breaches of warranties made to some, but not all condominium unit owners, with respect to common areas may be apportioned. Plaintiff attempts to argue that in <u>Cafro v.</u>

24

Brophy,  62 Conn. App. 113, 123 n. 6 (2001), the Court approved the decision in Starfish

Condominium Association v. Yorkridge Service Corp.. 295 Md. 693 (1993), upon which

plaintiff relies. Plaintiff's Memorandum of Law, p. 36.   However, the Cafro court cited

Starfish Condominium, only with respect to the issue of what language in a purchase

contract would suffice to effectively disclaim the implied warranty of habitability.  The

Cafro case did not consider, and has nothing to do with, any issue regarding

apportionment of damages.   Thus, no Connecticut decision cites with approval any

holding of any other court on the issue of apportionment.

     A number of courts that have considered the issue of apportionment of breach of

warranty damages relating to common elements of a condominium when some but not all

unit owners are the beneficiaries of the warranties that were breached have held that these

damages are to be apportioned.  For example, this issue was addressed in the matter of

Meadowbrook Condominium Association v. South Burlington Realty Corp. , 152 Vt. 16

(1989).  In that case, a condominium association brought an action against the developer

for, inter alia, breach of express and implied warranties relating to the common areas.

Under the Vermont statutory scheme, each unit owner has an undivided interest in the

common areas, as is the case in Connecticut. C.G.S. § 47-202(8).  The court found that

25

warranties with respect to common elements were made to some but not all of the unit owners.  The issue was whether the whole of the damages must be awarded or whether the  damages must be apportioned because warranties were not made to all unit owners. The court held that the damages must be apportioned.   The court noted that those unit owners to whom the warranties were given will be compensated, despite the apportionment, for their share of the repair costs.  Id. at 243.

Assuming for the present analysis that any warranties were made to some unit owners at Winthrop House,  apportioning damages relating to such warranties in proportion to the number of unit owners to whom the warranties were given would fully and fairly compensate those unit owners.  Pursuant to the Declaration, each unit owner is solely responsible for his allocated percentage of common expenses.  Declaration pp. 8-9, 16 found at  Exhbit A to Defendants' Position Paper.  Thus, any expenses to repair or replace the alleged defects would be apportioned among the unit owners according to their allocated percentage of responsibility for those expenses.  In like manner, apportioning damages in accordance with this system is both equitable and consistent.

In Jablonsky v. Klemm, 377 N.W. 2d 560 (N.D. 1985), the North Dakota Supreme Court also considered the issue of apportionment of damages and held, like the

court in <u>Meadowbrook</u>, that apportionment was required.  In its Memorandum of Law the plaintiff attempts to distinguish the clear holding of <u>Jablonsky</u> by arguing that <u>Jablonsky</u> applied a "two-prong" analysis to the issue of apportionment of damages.  Plaintiff's Memorandum of Law, pp. 33-35.   Plaintiff's argument misstates the holding of <u>Jablonsky</u> and the analysis undertaken by the Court in that case.

Despite plaintiff's argument to the contrary, the court in <u>Jablonsky</u> did not require a "latent/patent division line among the purchasing unit owners" in order for apportionment of damages to be required.  The latent/patent defect only arises in the context of whether or not any implied warranty was given so as to make the developer of the condominium liable for damages for breach of warranty.   Once the court determined there was a warranty and the extent of the warranty, the latent/patent defect analysis had nothing to do with the issue of whether or not the damages should be apportioned among unit owners.

Plaintiff attempts to further distinguish <u>Jablonsky</u> by arguing that the title interests of unit owners under North Dakota law are different than under Connecticut law, and that this is crucial to the <u>Jablonsky</u> court's holding.  This argument is specious.  North Dakota law provides that the common areas are owned by the unit owners as tenants in common

27

in proportion to each unit's interest.  <u>Id.</u> at 569.  Under Connecticut law,  unit owners

own an undivided interest in the common elements.  C.G.S. § 47-202(8).   There is simply

no functional difference between language that says an "undivided interest" and languge

that says "tenants in common."   The basic ownership principle is the same:  an undivided

ownership interest in the common elements.   <u>Jablonsky</u> and <u>Meadowbrook</u> are directly

on point with the present matter.

Further, the Connecticut Supreme Court has found that traditional distinctions

such as "joint tenants"  or "tenants in common" are not to be rigidly applied to

condominium ownership, particularly with respect to ownership of common elements.  In

<u>Gentry v. City of Norwalk</u>, 196 Conn. 596 (1985), the Court was faced with the question

of whether each individual condominium unit owner in a 67-unit condominium was

entitled to one full vote in  a referendum on the establishment of a proposed historic

district, or whether each unit owner was entitled to 1/67 of a vote.  In <u>Gentry</u>, votes were

to be cast pursuant to C.G.S. § 7-147b with respect to the establishment of a proposed

histric district to be known as the Norwalk Green Historic District.  Under the statute any

tenant in common of any freehold interst in any land has a vote equal to the fraction of his

ownership in said interest.  Joint tenants vote as if each joint tenant owned an equal

28

fractional share of such land.  The condominium owners argued they should each have one full vote.  The plaintiffs, who owned two other parcels of land in the proposed district, argued that the unit owners should only have 1/67 of a vote each.  The court held that each condominium owner was only entitled to the fractional 1/67 share of a vote.  This directly negates the plaintiff's tortured attempts to distinguish <u>Jablonsky</u> on the basis that <u>Jablonsky</u> only applies to tenants in common, which plaintiff argues is in direct contrast to Connecticut's statutory scheme.

While the <u>Gentry</u> case does not deal with apportionment of breach of warranty damages it does clearly illustrate that the Connecticut Supreme Court  has made an apportionment of each unit owner's interest with respect to a property right when presented with such a factual situation.  It is not unreasonable to assume that the Court would accept the rationale of other courts that have considered the issue of apportionment of damages and have determined that apportionment is required.

The plaintiff relies on the cases of <u>Starfish Condominium Association v. Yorkridge Service Corporation</u>, 295 Md. 693 (1983) and <u>Stony Ridge Hill Condominium Owners Association v. Auerback</u>, 64 Oio Ap. 2d 40 (1979).  Both cases are distinguishable from the present matter.

In both <u>Starfish</u> and <u>Stony Ridge</u> the allegations were that implied warranties or express warranties with respect to the defects at issue were made to <u>all</u> unit owners. The issue with respect to apportionment went to whether or not subsequent purchasers were entitled to the benefit of the warranties made to the original purchasers. This is in contrast to the present matter, in which the plaintiff is relying on warranties allegedly made to only some of the purchasers, i.e. the NY purchasers, and is trying to extend the benefit of these alleged warranties to all unit owners. Further, there is no indication in either <u>Starfish</u> or <u>Stony Ridge</u> that the statutes at issue mirror Connecticut statutes.

The plaintiff has failed to show that the Opinion of the Court with respect to the applicability only to the New York purchasers of the promises the Court found in the Preiss Breismeister letter appended to the New York Supplement is contrary to law. The Court should accept the Opinion.

## III.  Conclusion

For all the foregoing reasons, and for the reasons articulated in detail in the defendants' previous submissions to the Court, the defendants respectfully request that the Court accept the Opinion of the Magistrate Judge and deny the plaintiff's objection thereto.

30

THE DEFENDANTS
BROOKSIDE ELM ASSOCIATES LIMITED
PARTNERSHIP
COLLINS PROPERTIES, LLC
COLLINS ENTERPRISES, LLC
ARTHUR COLLINS, II

_____
Jane I. Milas
Garcia & Milas, P.C.
44 Trumbull Street
New Haven, CT  06510
Tel. (203) 773-3824
Facsimile (203) 782-2312
Federal Bar No. ct01271

## <u>CERTIFICATION</u>

This is to certify that a copy of the foregoing has been sent via first class mail, postage prepaid to all counsel of record this 6th day of July 2004.

31

_____
Jane I. Milas

_____