UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
(at Bridgeport)

| | |
|---|---|
| WINTHROP HOUSE ASSOCIATION, INC., ) | Case No.: |
| Plaintiff, ) | 3-00-CV-328(AHN) |
| v. ) | |
| ) | |
| BROOKSIDE ELM ASSOCIATES LIMITED PARTNERSHIP, ) | |
| et al., ) | |
| Defendants. ) | July 15, 2004 |

FILED
2004 JUL 16 P 6: 06
U.S. DISTRICT COURT
BRIDGEPORT, CONN.

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF
ITS LOCAL RULE 72.2(a) OBJECTION**

The plaintiff in the above-entitled Action, **Winthrop House Association, Inc.** (the "Winthrop Association"), hereby files this Reply Memorandum of Law in response to the 7/6/04 Opposition Memorandum (the "7/6/04 Brief") filed by the Declarant, Brookside Elm Associates Limited Partnership, and its related defendants (collectively, the "Declarant").

A. **The *de novo* Standard of Review of the Magistrate Judge's Decision**. As a preliminary matter, the standard of review by the District Court of a Magistrate Judge's decision, pursuant to Local Rule 72.2, is not the "clearly erroneous" standard as the Declarant has asserted (and which standard is only applicable to the Local Rule 72.1(C)(2) and (4) matters, which are not involved herein). (7/6/04 Brief, p. 7). Instead, in the decision hereon, which will be dispositive of certain claims and defenses, the District Court makes a *"de novo"* and "independent" determination with respect to the Magistrate Judge's decision. Local Rule 72.2(b). *Accord*: Resolution Trust Corp. v. Camhi, 861 F. Supp. 1121, 1124 (D. Conn. 1994) (TFGD); Kelsey v. Sheraton Corp., 662 F. Supp. 10, 12 (D. Conn. 1986) (MJB).

B. **The Winthrop Association's Standing (Re: the NHW Act)**.

1. **The Declarant's Position**. The Declarant's observation that a condominium association is not specifically named in the Definitions section of the New Home Warranties Act (the "NHW Act"), C.G.S. §§47-116, *et seq.*, at §47-116, is correct. (7/6/04 Brief, pp. 9-10). (All statutory references herein, unless otherwise stated, are to the Connecticut General Statutes.) However, the analysis does not stop at said point;

- 1 -

instead, the relevant issue is whether a condominium association is entitled, as a matter of law, to represent persons who are NHW Act "purchasers".

2. **An unpredicated representative right in litigation is accorded to a condominium association in §47-244(a)(4).** Simply stated, when a statute gives the representative right in litigation to specified persons or entities, they thus "have been given the statutory right to sue in their own representative capacities", Second Exeter Corp. v. Epstein, 5 Conn. App. 427, 430, 499 A.2d 429, 431 (1985) (Cit. omitted), *cert. den.* 198 Conn. 802, 502 A.2d 932 (1986), and therefore can assert all of the subject rights of his/its principal in the lawsuit. Accordingly, when a person has a cause of action, it is axiomatic that said person, or (in the alternative) his statutorily-authorized alter ego, *viz.*, his designated representative on behalf of the principal, can therefore file an action to pursue the subject right.

Critically, the Declarant does not deny that, pursuant to the Common Interest Ownership Act ("CIOA"), C.G.S. §§47-200, *et seq.*, at §47-244(a)(4), the Winthrop Association has been given the unpredicated "statutory right to sue in [its] own representative capacit[y]". Second Exeter Corp., 5 Conn. App. at 430, 499 A.2d at 431. Said representative right is without any carve-outs (as previously discussed by the Winthrop Association in its 5/7/04 Brief, at pp. 1-5), as confirmed in Candlewood Landing Condominium Association, Inc. v. New Milford, 44 Conn. App. 107, 111, 686 A.2d 1007, 1009 (1997) ("§47-244(a)(4) contains *no* exceptions or limitations") (Emphasis supplied). *Accord*: Caswell Cove Condominium Association, Inc. v. Milford Partners, Inc., 58 Conn. App. 217, 224-25, 753 A.2d 361, 363 (2000), *cert. den.* 254 Conn. 922, 759 A.2d 1023 (2000).

Two final points need to be addressed. First, the non-CIOA statute, §12-117a (municipal tax appeals), under which the condominium association representationally sued in Candlewood Landing, *supra,* does not make any reference to the right of a representative to file a tax appeal on behalf of a property owner. Nonetheless, the Appellate Court held that the condominium association had the full right under §47-244(a)(4) to represent its 13 unit owners in the municipal tax appeal. *Id.,* 44 Conn. App. at 111, 686 A.2d at 1009. Thus, a non-CIOA statute on which a condominium association sues (in its §47-244(a)(4) capacity) does not need to make any reference to the fact that a condominium association can also sue thereunder, *Ibid.*; otherwise, each

of the literally hundreds of Connecticut statutes which authorize lawsuits would have to list each of the representatives who can also sue under each statute, such as attorneys–in–fact, guardians *ad litem*, executors, administrators, condominium associations (where relevant), and so forth. Nevertheless, herein in the NHW Act's definition of a "purchaser", §47-116, it in fact specifically (although unnecessarily) includes a reference to a purchaser's "designated representatives", which clearly would include the statutorily–designated representative pursuant to §47-244(a)(4), *viz.*, the condominium association. In sum, as a result of §47-244(a)(4)'s unpredicated statutory grant of representative authority to a condominium association, which is in fact mirrored word–for–word in Section 2.2(e) of the Winthrop Association's By-laws that were prepared solely by the Declarant (a point stressed in the Winthrop Association's 5/7/04 Brief, at pp. 4-5, and an admission which the Declarant does not deny), thus, the Declarant's position that the Winthrop Association does not have proper standing to assert the NHW Act claims on behalf of two or more purchasing unit owners (and their successors—*See* the 5/7/04 Brief, pp. 27-32) is without merit.

    C.    **The Invalidity of the Disclaimers of the Implied Warranties**.

        1.    **The Declarant's Position Re: the CIOA I/W Disclaimers**. Because CIOA was modeled after the Uniform Common Interest Ownership Act (the "UCIOA"), thus, the Declarant states (and correctly so) (7/6/04 Brief, p. 12) that guidance is provided by the comments thereunder, and specifically Comment No. 4 to UCIOA §4-115(b), Uniform Laws Annotated, Vol. 7 (1994), at pp. 634-35, which UCIOA §4-115(b) is the same as §47-276(b). Prior to addressing Comment No. 4, reference is first made to the Prefatory Note to UCIOA, in which it is confirmed (at Paragraphs 2 and 5 thereof) that: (i) "A fundamental precept of UCIOA is that *full* and *adequate disclosure* to purchasers is a viable alternative to governmental registration and supervision"; and (ii) "UCIOA's thrust in the area of consumer protection is to protect residential purchasers". (Emphasis supplied).

        2.    **When the entire Comment No. 4 is read, it confirms that the Declarant has failed to validly disclaim the I/Ws under CIOA; and similarly, the Declarant has failed to validly disclaim the NHW Act's E/Ws and I/Ws**. As support for its assertion that it validly disclaimed the CIOA I/Ws (but no disclaimers of CIOA E/Ws are permitted, as the Magistrate Judge confirmed—12/19/03 Opinion, at p. 50), the

- 3 -

Declarant attempts to seek refuge in its selective quotation of just the fifth and final sentence of Comment No. 4. (7/6/04 Brief, p. 12). However, when the entirety of Comment No. 4 is read, it does indeed provide important guidance, and in fact it confirms (in accordance with the UCIOA's seminal principle of consumer protection, as set forth in the above–cited UCIOA Prefatory Note) that the Declarant's I/Ws disclaimers were ineffective:

> **4.** Under subsection [Uniform Act §4-115](b) [*i.e.*, C.G.S. §47-276(b)], general disclaimers of implied warranties are not permitted with respect to purchasers of residential units. However, a declarant may disclaim liability for a *specified defect* or a *specified failure to comply with applicable law* in an instrument signed by such a purchaser. The **requirement** that the disclaimer as to each defect or failure be in a signed instrument in designed *to insure* that the declarant [1] sufficiently calls each *defect or failure* to the purchaser's attention and [2] that the purchaser has the opportunity to consider the *effect* of the particular defect or failure upon the bargain of the parties. Consequently, this section imposes a *special burden* upon the declarant who desires to make a "laundry list" of defects or failures by *requiring* him [1] to emphasize each item on such a list *and* [2] make its *import* clear to prospective purchasers. For example, the declarant of a conversion of common interest community might, consistent with this subsection, disclaim certain warranties for "all electrical wiring and fixtures in the building, the furnace, all materials comprising or supporting the roof, and all components of the air conditioning system". (Emphasis and Numeralization added).

In its 5/7/04 Brief (pp. 14-16), the Winthrop Association noted (and as confirmed in the above–cited second and third sentences of Comment No. 4) that there must be sufficient detail given in the Declarant's CIOA I/W disclaimer with respect to each of the numerous defects, and each of the Code violations, which were identified in detail in the 5/19/00 Six Expert Reports (*i.e.*, 5/19/00 Exhibits R, X, Y, Z, AA and UU).

In response to the Winthrop Association's analysis (5/7/04 Brief, pp. 14-16) that the Declarant had failed to comply with the carefully–prescribed I/W disclaimer requirement in §47-276(b) that each defect (or class of defects) and each failure to comply with applicable law (*i.e.,* a Code violation) must be "specified", the Declarant simply urges (7/6/04 Brief, pp. 12-13) that its CIOA I/W disclaimers went beyond the type of disclaimer that the Declarant believes is set forth in the fifth sentence of Comment No. 4. Such an assertion highlights the Declarant's misunderstanding about what must be listed in order to constitute a valid CIOA I/W disclaimer. More specifically, the fifth sentence of Comment No. 4 lists systems, not defects or Code violations; and it is defects or class of defects (not systems) and Code violations that must be specified in order to constitute a valid CIOA I/W disclaimer under §47-276(a) ("a specified *defect* ...") (Emphasis added). *Accord*: Comment

No. 4 (Second and Third Sentences). Thus, the Declarant's listing of the various building systems and other components in its attempted disclaimer, for example in Paragraph 10 of its 4/95 Public Offering Statement (the "POS") (*See* 5/7/04 Brief, pp. 7-8), is totally ineffective because there was no specification therein of any defects (or any Code violations) which the Declarant wanted to disclaim under CIOA.

Furthermore, not only does the Declarant not deny that it did not even attempt to list any defects in its disclaimers (for example, in POS Paragraph 10) nor attempt to list any of the multitude of Code violations (but it should be noted that no I/W disclaimers of Code violations are authorized in the NHW Act), but moreover, it is uncontestable that it has made no compliance with regard to each declarant's second, or "import", requirement, which is set forth in the fourth sentence of Comment No. 4, and which is consistent with UCIOA's consumer protection focus. In fact, a 2001 decision under the related NHW Act fully supports this "import", or second, UCIOA requirement. More specifically, in <u>Cafro v. Brophy</u>, 62 Conn. App. 113, 123 n. 6, 774 A.2d 206, 213 n. 6, *cert. den.* 256 Conn. 932, 776 A.2d 1149 (2001), the Appellate Court favorably cited numerous decisions from sister states that required "a conspicuous provision [in the seller's I/W disclaimer] which fully discloses the consequences of its inclusion of the [I/W disclaimer]". In sum, the Declarant in its 7/6/04 Brief has not pointed to any document which even partially addresses this import requirement in Comment No. 4 in order for an I/W disclaimer to be valid.

In addition, the plain language of CIOA and also of the NHW Act requires (as the Winthrop Association has previously discussed, 5/7/04 Brief, pp. 18-19) that: (i) any CIOA I/W disclaimers must be set forth in a *separate* instrument, that is, in a CIOA document separate from the purchase agreement (as discussed more fully in the next sentence); and (ii) under the NHW Act (at §§47-117(c) and 118(d)), the E/W and I/W disclaimers must specifically be set forth in a separate and subsequent instrument. More specifically, with respect to CIOA's "instrument" requirement, the CIOA I/W disclaimer document must be separate from the purchase agreement, which of course is signed by both parties, because the statutory text of §47-276(b) refers just to "an instrument signed by the purchaser", in contrast to "an instrument signed by the declarant and a purchaser" (which would be the purchase agreement).

In its 7/6/04 Brief (pp. 11-16), the Declarant does not deny that there was no CIOA or NHW Act I/W disclaimer instrument signed by the purchasers that was separate from the purchase agreement (and the documents incorporated therein, such as the POS). Moreover, the NHW Act's clear requirement that the I/W disclaimer instrument must be in a document that is subsequent to the purchase agreement (and any contemporaneous or prior documents incorporated therein) was strongly confirmed in last week's significant decision of <u>Beucler v. Lloyd</u>, 83 Conn. App. 731, ____ A.2d ____(2004). In said case, the new home builder argued that it had properly modified the NHW Act E/Ws and I/Ws via its purchase agreement. In rejecting said argument, which is the same as the one asserted herein by the Declarant that the Winthrop House purchase agreement (and its incorporation of prior-dated documents, such as the POS) could validly constitute its I/W disclaimer document, the Appellate Court held, 83 Conn. App. at 737 and 739, that pursuant to the "plain language of both §§47-117 and 47-118" any NHW Act modification (or exclusion) of an E/W or I/W must be set forth in "a written instrument signed by the purchaser *after* the original [purchase] contract was executed". (Emphasis supplied).

In conclusion, as noted above, because it is uncontroverted by the Declarant that, at no time, was there ever a written instrument executed by any purchaser that was separate from the purchase agreement which attempted to disclaim the I/Ws or E/Ws, thus, on this basis alone and as a matter of law, none of the Declarant's NHW Act E/Ws and I/Ws disclaimer provisions or its CIOA I/Ws disclaimer provisions, which are solely in the purchase agreement (and its incorporated documents), are effective. Moreover, even the improper document on which the Declarant relies as its CIOA I/W disclaimer document, *viz.*, the purchase agreement (and its incorporated documents), completely fails to set forth: (i) any CIOA I/W disclaimer of specified defects or Code violations; or (ii) any discussion that complies with the "import" requirement. Moreover, although not addressed by the Declarant in its 7/6/04 Brief, it similarly has failed to comply with the NHW Act disclaimer requirements. (*See* 5/7/04 Brief, pp. 9-14). In sum, the Declarant's assertion that it validly disclaimed the CIOA I/Ws (and by inference the NHW Act E/Ws and I/Ws) is without merit.

D. **The Winthrop Association was a third party beneficiary in connection with certain Common**

**Elements E/Ws in Rider II to the Sorrow Purchase Agreement.** Contrary to its explicit words in Paragraphs 7(a), (b) and (e) of Rider II to the Sorrow Agreement (5/19/00 Exhibit QQ), the Declarant now oddly asserts (7/6/04 Brief, pp. 18-19) that "there is nothing in the Sorrow Rider II which indicates any intention to make the Association a third party beneficiary of the [Sorrow] agreement". But, as the Declarant had unquestionably agreed without predication in the plain text in each of said Paragraphs, the *common elements* E/Ws stated therein shall "run to the [Winthrop] Association". Thus, the common law requirement that must be met in order to create a third party beneficiary under the doctrine reconfirmed in <u>Gateway Company v. DiNoia</u>, 232 Conn. 223, 231, 654 A.2d 342, 346 (1995), has been satisfied herein in that it could not be more patent from their contractual language that the Declarant and the Sorrows, as "the parties to the [contract] intended to create a *direct obligation* from one party [*viz*., the Declarant] to the [contract] to the third party [*viz*., the Winthrop Association]". (Cit. omitted; Emphasis in the original). (Moreover, in contrast to the Declarant's characterization of the three E/Ws as being merely contractors' warranties that were to be passed on by the Declarant (7/6/04 Reply Brief, pp. 18-19), such contractor warranties constitute but only one element of each of these E/Ws, as more fully discussed in the 5/7/04 Brief, pp. 21-22.) In sum, the Declarant's assertion (7/6/04 Brief, pp. 16-19) that the Winthrop Association was not the explicitly agreed upon third party beneficiary in said Paragraphs 7(a), (b) and (e) is without merit. Finally, the Declarant does not deny that the Winthrop Association (5/7/04 Brief, p. 22) was also the third party beneficiary of the other common elements E/Ws in the Sorrow Rider II (*for example*: the E/W in Paragraph 7(d) regarding the common elements elevator) under the doctrine reconfirmed in <u>Delacroix v. Lublin Graphics, Inc.</u>, 993 F. Supp. 74, 83 (D. Conn. 1997) (WWE): "It is not necessary that express language in the contract create the [third party] obligation". (Cit. omitted).

  E. **Privity is not required for NHW Act Claimants.** The Declarant asserts (7/6/04 Brief, pp. 19-22) that only an original purchaser can file a NHW Act claim. In addition to the numerous cases discussed by the Winthrop Association (in its 5/7/04 Brief, at pp. 25-27) that privity is not required for a tort claimant to have standing (and that the NHW Act is principally a tort–based consumer protection statute), which are matters the Declarant did not contravene, the recent decision in <u>Sheltry v. Unum Life Ins. Co. of America</u>, 247 F. Supp. 2d

- 7 -

169, 181 (D. Conn. 2003) (GLG), further confirms that privity is not required for a claimant pursuant to a consumer protection statute. As the District Court succinctly held in the context of another consumer protection statute, the Connecticut Unfair Trade Practices Act ("CUTPA"), §§42-110a, *et seq.*:

> We have found no authority for the proposition that a contractual relationship or privity is required for a party to maintain an action under CUTPA. To the contrary, since the underlying purpose of CUTPA is consumer protection, [non–privity] consumers such as plaintiffs should be entitled to invoke the protections of CUTPA in appropriate cases. (Cit. omitted).

In its counterpoint to said doctrine, the Declarant cites (7/6/04 Brief, p. 21) Coburn v. Lenox Homes, 173 Conn. 567, 569-70, 378 A.2d 599, 600 (1977), that the NHW Act "Certificate of Occupancy" I/W under §47-121, in which the I/W is specifically made in the statute just to the "purchaser", and therefore the subject I/W would not run to any successor of the original purchaser. Critically, however, the E/Ws and I/Ws in the principal and newer sections of the NHW Act, at §§47-117 and 118, do not have such a limitation. More specifically, nowhere in said statutory provisions are the E/Ws and I/Ws limited specifically to "purchasers"; and, the reasons for the absence of such a limitation are that (as more fully discussed in the 5/7/04 Brief, at pp. 25-31): (i) breach of contract claims (*e.g.*, NHW Act E/W claims) for damage to property can be assigned to a subsequent purchaser; and (ii) a tort claim for negligent construction (*e.g.*, NHW Act I/W claims) does not require privity. In sum, the Declarant's position that privity is required for filing a NHW Act claim is without merit.

F. **The Declarant's Common Elements E/Ws are not subject to Apportionment**. The Declarant asserts (7/6/04 Brief, pp. 23-29) that its common elements E/Ws in the 11/14/95 Preiss–Breismeister Letter (the "P/B Letter"—5/19/00 Exhibit F) are divisible among the purchasers and thus such E/Ws are solely for the benefit of the NYS Purchasers. More specifically, the Declarant asserts that a Connecticut unit owner's interest in his condominium is the functional equivalent of a tenants–in–common ownership (7/6/04 Brief, p. 27), and therefore the apportionment of the P/B Letter's E/Ws solely to the seven NYS Purchasers (7 out of the 47 Winthrop House units, or 14.9%) would be proper. However, said assertion is without merit because it is directly contrary to the clear language of CIOA (at §47-226(a)(1): the units have "undivided interests in the common elements and in the common expenses"), and is directly contrary to the case law, See, e.g., Grey v.

Coastal States Holding Co., 22 Conn. App. 497, 504, 578 A.2d 1080, 1084, *cert. den.* 216 Conn. 817, 580 A.2d 57 (1990) (under CIOA, the common elements "belonged to [the defendant unit owners] in common with the other unit owners"). It is hornbook law that the severable, tenants–in–common ownership is the polar opposite of CIOA's "in common" ownership of the common elements. Thus, the primary apportionment decision on which the Declarant relies, Jablonsky v. Klemm, 377 N.W.2d 560 (N.D. 1985), which critically predicated its analysis in substantial part on the fact (*Id.*, at 569 n.4) that each unit owner under North Dakota law had a severable tenants–in–common ownership in the common elements is inapplicable to Connecticut's CIOA-based "in common" undivided ownership of the common elements. Also, with regard to Meadowbrook Condominium Assoc. v. South Burlington Realty Corp., 566 A.2d 238 (Vt. 1989), which is relied upon by the Declarant (7/6/04 Brief, pp. 24-25), it is inapplicable herein, as follows: (i) the decision was based on the latent/patent analysis that a unit owner–purchaser, who is "on–notice" of a defect, cannot recover against the declarant, 566 A.2d at 243; (ii) in CIOA, however, there is no "on–notice" exclusion to the CIOA I/Ws, at §47-276(b), and thus the latent/patent analysis is inapplicable herein; and (iii) as importantly noted by the Dissent, 565 A.2d at 245, "[t]he weight of authority is clearly to the contrary recognizing that [even] a single–unit owner may recover all damages relating to the common areas" (Cits. omitted).

The absence of merit to the Declarant's position is confirmed by the result that would accrue if this position were to be followed. For example, with regard to the P/B Letter's E/Ws in Paragraph 1 that " a new concrete floor [would be] poured" in the Basement: (i) assuming the cost of a new floor in the eight different rooms (and multitude of corridors) in the Basement were $40K, then (per the Declarant) it would pay only 14.9% thereof to the Winthrop Association for the seven NYS Purchasers, or $5,960.00, and the Winthrop Association itself would then have to pay for the 85.1% balance of the new floor, or $34,040.00, as an undivided common expense (because all common expenses pursuant to §47-226(a)(1) are undivided); (ii) said $34,040.00 common expense amount would have to be paid by each of the 47 unit owners, or an average of $724.47 per unit owner; and (iii) therefore, even though the seven NYS Purchasers would have the Declarant pay the 14.9% portion, nevertheless, the seven NYS Purchasers (who, one would believe, should have to pay nothing for the

new concrete floor because the basement floor E/W unquestionably does apply to them) would then have to pay (as with all the other 47 Unit Owners) $724.47 (on average) for the new floor. Clearly, each NYS Purchaser had the "reasonable expectation" (which expectation is an important matter confirmed in Winthrop Association's 5/7/04 Brief, at p. 37, that the Declarant does not deny) that 100% of the P/B Letter's E/Ws work would be done by the Declarant, not just a mere fraction of 14.9% of (for example) a new floor in each of the Basement's eight rooms (and the corridors). Moreover, the reasonableness of said expectation that 100% of a declarant-promised item would be done is consistent with the condominium case law from the other states. *See, e.g.*, Starfish Condominium Association, Inc. v. Yorkridge Service Corp., 295 Md. 693, 458 A.2d 805, 812-13 (1983), and the decisions cited therein. (*See* the 5/7/04 Brief, pp. 36-37).

As additional support for its assertion that a Connecticut unit owner's interest under CIOA is a divided/severable interest, the Declarant curiously discusses (7/6/04 Brief, pp. 27-28) the decision in Gentry v. City of Norwalk, 196 Conn. 596, 494 A.2d 1206 (1985), which involved CIOA's predecessor statute, the Condominium Act of 1976 (the "1976 Act"), §§47-68a, *et seq.* In said decision, the Supreme Court repeatedly stressed the fact that, under the 1976 Act (and similar to CIOA), each unit owner has an undivided interest in the common elements. *Id.,* 196 Conn. at 604, 610 and 613, 494 A.2d at 1211, 1214 and 1215. As a result of the fact that (per the 1976 Act) the unit owners did not have a severable interest in the common elements, the Supreme Court held, 196 Conn. at 613, 494 A.2d at 1215, that the entire condominium consisting of 67 unit owners constituted just one entity and thus only one "property owner" which could vote in connection with establishing a historic district. Said pre-CIOA decision reinforces the fact that each unit owner has an undivided interest in the common elements, and thus, as owners of the common elements in common with each other, they are one collective unit to whom, when a common elements promise is made (such as the E/W promises made by the Declarant in its P/B Letter), it is made to the one collective unit, not to any fractionalized portion thereof. In sum, the assertion by the Declarant that the P/B Letter's E/Ws can be apportioned to only 14.9% of the Winthrop House unit owners is without merit.

• Respectfully submitted on July 15, 2004.

                          **PLAINTIFF**

By: _____
     Philip H. Bartels
For:  Holland, Kaufmann & Bartels, LLC
     Its Attorneys
     289 Greenwich Avenue
     Greenwich, CT 06830
     (203) 869-5600 - (FAX) 869-4648
     Federal Bar No. ct06836

## CERTIFICATION

THIS IS TO CERTIFY that a copy of the foregoing shall be mailed this day, postage prepaid, to all Counsel of Record, and to the Mediator, on July 15, 2004:

Jane I. Milas, Esq.
Garcia & Mills
44 Trumbull Street
New Haven, CT 06510-1001

Thomas W. Witherington, Esq.
Cohn Birnbaum & Shea, PC
100 Pearl Street
Hartford, CT 06103-4500

Richard M. Dighello, Jr., Esq.
Updike, Kelly & Spellacy
One State Street
P.O. Box 231277
Hartford, CT 06123-1277

Robert A. Rubin, Esq.
(The Parties' Mediator)
Postner & Rubin
17 Battery Place
New York, NY 10004-1101

_____
Philip H. Bartels

U:\PHB\CONDOS\WINTHROP\Reply.Memorandum of Law.wpd